## OFFNER, et al. v KELLER PARK INVESTORS, I, LTD.
### Case No. CA84-3636
Sixth Judicial Circuit, Pasco County

August 20, 1986

### APPEARANCES OF COUNSEL

**John T. Allen, Jr.** and **Christopher P. Jayson, Law Office of John T. Allen, Jr., P.A.,** for plaintiffs.

**V. James Dickson** for defendants.

### OPINION OF THE COURT

LOWELL W. BRAY, JR., Circuit Judge.

THIS MATTER coming on to be heard on July 28, 29, and 31, 1986, on the complaint of various mobile home owner residents of Senate Manor mobile home park against Keller Park Investors, I, Ltd., the owner-operator of the park, said complaint seeking relief under Florida Statutes 723.004(4) and 723.033 and the court having sat as the

trier of fact, having heard the testimony, reviewed the exhibits, and having considered the arguments of counsel, the Court finds as follows:

FINDINGS OF FACT:

1. On June 30, 1983, Keller Investment Properties, Inc., arranged for the purchase of Senate Manor Mobile Home Park, a 100% occupied park of approximately 395 units for the sum of $4,125,000.00.

2. The $1,000,000.00 down payment for the purchase of the property was raised by the syndication of a note in the amount of $1,375,000.00.

3. From the money raised in this initial syndication, $103,000.00 (2-½% of the purchase price) was paid to Keller Investment Properties, Inc. as a "finder's fee".

4. Title to the property was taken in the name of Keller Park Investors, I, Ltd. in a limited partnership.

5. The sole owner of Keller Investment Properties, Inc. and the general partner of Keller Park Investors I, Ltd. is Brian R. Keller.

6. The partnership entered into a contract with Keller Investment Properties, Inc. to pay 5% of the gross receipts from the park to Keller Investment Properties, Inc. as a management fee.

7. The primary, if not sole, consideration for the 5% management fee was the presence, in the park, of two (husband and wife) part-time managers.

8. Through various financing arrangements, the park was mortgaged for 113% of its purchase price.

9. Because of the financing scheme, the interest expenses on the mobile home park in 1985 (a representative year) came to $124.79 per lot, per month.

10. The primary objective in purchasing the park was to sell the depreciation deductions from it as a tax shelter.

11. Because the finder's fee and the depreciation were based on the purchase price (the larger the price, the larger the benefits), there was no incentive to bargain to buy the park at the best (lowest) price possible.

12. During the period from July 1, 1983, until August, 1986, the partnership has received over $1,000,000.00 in cash and tax benefits, over $1,000,000.00 in interest on financing has been paid, and the management company has received almost $200,000.00 in finder's fees and management fees.

13. At the present time, the partnership has a negative cash investment of $675,000.00 in the park.

14. At the time Senate Manor was purchased, the rents were $101.00 for an interior lot, $107.00 for a corner lot, and $112.00 for a lakefront lot.

15. As of January 1, 1984, the rents were raised to the following:

$133.00 for an interior lot

$139.00 for a corner lot

$144.00 for a lakefront lot.

16. On December 19, 1984, the plaintiffs herein filed his suit.

17. As of January 1, 1985, the rents were raised to the following:

$145.00 for an interior lot

$151.00 for a corner lot

$156.00 for a lakefront lot.

18. As of January 1, 1986, the rents were raised to the following:

$159.00 for an interior lot

$165.00 for a corner lot

$170.00 for a lakefront lot.

19. On May 8, 1985, this Court entered its order directing that the $32.00 increase for 1985 due on May 1 and each month thereafter be paid into the Registry of the Court, or into a specially created escrow account. The funds have been put into a special fund held at interest in the name of counsel for both parties.

20. The cash operating expenses for the mobile home park rose 10.42% in 1983, 18.82% in 1984, and fell 2.09% in 1985. The total amount of increase in cash operating expenses from 1983 to 1985 amounted to $6.44 per lot per month.

21. The rental increases were precipitated not by the market or by operating expenses, but by a combination of extraordinary interest expenses and a desire for larger profits.

22. During the ownership by the partnership, minimal improvements were made and services suffered at least some diminution in quality.

23. The mobile home owners have $8,500.00 invested in their mobile homes (most of which are double wide) and appurtenances including cement work, screen and aluminum rooms, storage sheds, etc.

24. There are few, if any, available parks to which the mobile home owners could move their homes, since most parks in the area are closed to mobile homes not purchased from the park owner and since most of the parks are filled.

25. The cost of moving and resetting the mobile homes and appurtenances would be approximately $10,000.00 and the home would be of less value after the move.

26. Mobile homes in the park are currently selling at $4,000.00 to $15,000.00 less than their fair market value because of the current level of rents in the park.

27. The residents of the mobile home park are all adults and are almost all retired people living on retirement benefits, pensions, or social security.

28. A reasonable rental charge for the interior lots in each of the three years, based upon rents charged in comparable parks, would be $101.00 in 1984, $116.00 in 1985, and $125.00 in 1986. In each year, an additional charge of $6.00 for each corner lot and $11.00 for each lakefront lot would also be reasonable.

29. Increases based on the Consumer Price Index gains for the previous year would give a January 1, 1984 increase of 3.8%, a January 1, 1985 increase of 4%, and a January 1, 1986 increase of 3.8%.

30. During the trial the Court struck certain testimony of Defendant's witness Dale Hayes under authority of *Walters v. State Road Department*, 230 So.2d 878 (Fla. 1st DCA 1970). The Court's findings would still be the same even if such testimony were considered and weighed by the Court as the trier of fact.

APPLICATION OF LAW TO FACTS:

A. The facts set out above establish procedural unconscionability because of the absence of any meaningful choice on the part of the mobile home owners, together with terms and benefits unreasonably favorable to the partnership and the management company. *Kohl v. Bay Colony Club Condominium*, 398 So.2d 865 (Fla. 4th DCA 1981), pet. for review denied 408 So.2d 1094 (Fla. 1981), *Steinhardt v. Rudolph*, 422 So.2d 884 (Fla. 3d DCA 1982). The mobile home owners find themselves bound by a bargain they never made. They have no voice in the matter of rents. The mobile homes, if not the owners themselves, are captives of the partnership and the management company. The owners have three choices: 1) pay the rent no matter how high it is set, 2) sell their mobile home at less than their actual value, or 3) move the mobile homes at possibly a greater loss than from a sale. Through an established pattern of self-dealing which the management company is following the value of the mobile home owner's assets is being siphoned off and confiscated by the partnership and the management company.

B. The facts set out above establish substantive unconscionability because of the outrageous degree of unfairness. *Kohl,* supra, *Steinhardt,* supra.

(a) The increases are not based on a legitimate financial basis for calculating rental values, but are arbitrary and capricious in that they are driven by the consequences of the defendant's financing scheme. Moreover, the increases are confiscatory in nature reducing the value of the mobile home owners property *Fredricks v. Hofmann,* 45 Fla. Supp. 44, (Circuit Court, Sarasota County, Fla. 1976). *Appel v. Scott,* 479 So.2d 800 (Fla. 2d DCA 1985).

(b) The increased rental is significantly higher than the fair market rental value of the lots (3.17% in 1984, 25% in 1985 and 27.2% in 1986). *State v. DeAnza,* 416 So.2d 1173 (Fla. 5th DCA 1982), *Appel,* supra.

(c) The rent grossly exceeds that paid for lots of equal value in comparable parks. (see Plaintiff's Exhibit No. 44 in evidence.) *DeAnza,* supra, *Appel,* supra, *Ashling Enterprises v. Browning,* 487 So.2d 56 (Fla. 3d DCA 1986), *Garrett v. Janiewski,* 480 So.2d 1324 (Fla. 4th DCA 1985).

IT IS THEREFORE, ORDERED AND ADJUDGED:

I. The Court enters judgment for the Plaintiffs and against Defendant because the rental increases of 1984, 1985, and 1986 were unconscionable.

II. To avoid any unconscionable result, the Court sets the rents for each of the years in question as follows:

|      | Interior Lot | Corner Lot | Lakefront Lot |
|------|--------------|------------|---------------|
| 1984 | $101.00      | $107.00    | $112.00       |
| 1985 | $116.00      | $122.00    | $127.00       |
| 1986 | $125.00      | $131.00    | $136.00       |

III. The Defendant is enjoined from levying, charging, or collecting any rents in excess of these rates from January 1, 1984 through December 31, 1986, and is ordered to refund to Plaintiffs such rents as have been collected in excess of these rental charges.

IV. Counsel for both parties are directed to pay over to the defendant from the specially created fund, any such sums as it may be entitled to under this Order and to remit the balance of the monies which are held under the Court's Order of May 8, 1985, to the Plaintiffs.

V. Should any Plaintiff be entitled to a credit in excess of the

144

amount being held in the specially created fund, he shall be entitled to deduct from each of his next twenty-four payments an amount equal to 1/24th of the credit balance to which he is entitled after the Clerk's refund to him. Should any Plaintiff cease to be a tenant before the expiration of the twenty-four months, he may, at his option, assign the right to reduce payments to his successor tenant or receive a money judgment against the Defendant for any unreclaimed excess rent to which he is entitled. The Court retains jurisdiction to enter such judgments as may be necessary or proper under this judgment.

VI. The Plaintiff is entitled to recover a reasonable attorney's fee and costs in this action, and the court retains jurisdiction to determine the amount of such fees and costs.

VII. Any and all other prayers for relief are denied.

DONE AND ORDERED in Chambers, at New Port Richey, Pasco County, Florida, this 20th day of August, 1986.