398 So.2d 865 (1981)
Sidney KOHL and Dorothy Kohl, His Wife, and Landmark First National Bank of Fort Lauderdale, As Trustee, Petitioners,
v.
BAY COLONY CLUB CONDOMINIUM, INC., a Florida Corporation, Not for Profit, Albert A. Lucy and Roselind G. Lucy, His Wife, Individually and As Representatives for the Class, Respondents.
No. 79-2394.
District Court of Appeal of Florida, Fourth District.
April 29, 1981.
Rehearing Denied June 4, 1981.
*866 Davis W. Duke, Jr., and J. Cameron Story, III, McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for petitioners.
Mark B. Schorr, Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for respondents.
HERSEY, Judge.
The non-final order appealed from here determined that the complaint seeking relief from the terms of a lease of recreational facilities (the rec lease) on grounds of unconscionability could be maintained in the form of a class action. It also determined that the condominium association (the association) and the joint owners of one condominium unit (the unit owners), plaintiffs below and respondents in this court, have standing to represent the plaintiff class. Brief reference to the factual background is essential to an understanding of the legal issues thus raised.
Drexel Properties developed and marketed the Bay Colony Club Condominium; however, sale of some of the units was accomplished through outside real estate brokers. All sales were originated by the use of a form Purchase Agreement prepared by the developer. This form legally obligated the prospective purchaser to buy an apartment, to accept title in accordance with the terms of the Declaration of Condominium and related documents, to accept an assignment of an interest in a lease of recreational facilities, and to pay rent and expenses. At closing the purchaser received a Condominium Warranty Deed conveying to the purchaser legal title to a condominium unit and a proportionate undivided interest in the common elements. In *867 addition the purchaser received an assignment of an undivided 1/640 interest in the rec lease and simultaneously became obligated to pay a proportionate part of the rent together with taxes and maintenance expenses in connection with the leased facilities. The association was not a party to the lease but was obligated by the documents to receive tax and maintenance payments from unit owners and to repair and maintain the recreational facilities from sums so received.
Each unit owner at closing pledged his interest in the condominium unit and his interest in the leasehold as security for the future payment of rent and taxes connected with the recreational facilities. The lease contains a provision for periodic cost-of-living rent increases.
Petitioners have an interest in this litigation as lessors of the recreational facilities (as successors in interest of the developer).
Respondent, the association, has an interest as the entity legally obligated to operate and maintain the leased facilities and to collect the necessary funds for this purpose from the unit owners.
Respondents, Albert Lucy and Rosalind Lucy, have an interest as joint owners of one of the condominium units.
Respondents, together, are alleged to have interests in common with all, or most of the other unit owners, sufficient to represent a class composed of the unit owners. In addition the association is alleged to have standing to represent a class composed of the condominium unit owners by virtue of statute.
There are 640 condominium units in the Bay Colony Club Condominium. Characterizing the owners of those units, first, according to their purpose in acquiring units, the record shows that a majority were purchased for resale, some were purchased as an investment for rental income, some as eventual retirement facilities, and some for present, permanent occupancy. Those same purchasers may also be categorized depending upon the sophistication and expertise they had or hired in reviewing documentation and attending to the details for closing. The pattern is again amorphous. Some had attorneys, some were attorneys, and others had neither personal expertise nor professional guidance. Finally, unit owners differ depending upon their relationship to (a) the developer and (b) this litigation. It appears that only some 200 of the present unit owners originally purchased their units directly from the developer. Thus two-thirds of the hypothetical class composed of present owners dealt with and acquired their interest from third parties other than the developer. And of the 640 unit owners, approximately 14% admittedly have no interest in this litigation, either because they have settled their grievances or because they formally opted out of the class action.
Against that factual background it is necessary to determine whether a class action is appropriate where the cause of action rests in common law unconscionability, and if so, the composition of the class and further whether the class may be represented by the association.
Some recent Florida cases appear to support the trial court's affirmative response to the initial inquiry. Before attempting to apply those cases here a word about the concept of unconscionability is in order.
The authorities appear to be virtually unanimous in declaring (or assuming) that two elements must coalesce before a case for unconscionability is made out. The first is referred to as substantive unconscionability and the other procedural unconscionability.
In the modern progenitor of the common law concept of unconscionability, Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir.1965), the court made the following analysis:
Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. *868 In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered into is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print or minimized by deceptive sales practices? (Emphasis supplied).
A very recent case, Bennett v. Behring Corp., 466 F. Supp. 689, 696 (S.D.Fla. 1979), further refined this analysis:
The dual requirements called for by Walker are the "absence of meaningful choice ... together with contract terms which are unreasonably favorable to the other party."
The first requirement under Walker, "absence of meaningful choice", is determined by analyzing the respective bargaining powers of the contracting parties, and the ability of the particular contracting party, in light of his education, intelligence, or lack thereof, to understand the terms of the contract. William v. Walker-Thomas Furniture Co., supra; Morris v. Capitol Furniture & Appliance Co., 280 A.2d 775 (D.C.[App.] 1971).
This is referred to as "procedural unconscionability".
The onerous contract term from which a party seeks relief is commonly referred to as "substantive unconscionability". See, e.g., Fleischmann Distilling Corp. v. Distillers Company Limited, 395 F. Supp. 221 (S.D.N.Y. 1975); see also, "In Defense of Unconscionability" 78 Yale L.J. 757 (1971); and "Consumer Protection Under Art. II of the UCC" 29 Ohio St.L.J. 689 (1968).
A case is made out for substantive unconscionability by alleging and proving that the terms of the contract are unreasonable and unfair. In the instant case it is alleged, in essence, that the terms of the recreational facilities lease are unreasonable and unfair. Since each member of the class is obligated under the identical lease and the terms of the lease have universal application, substantive unconscionability seems admirably suited to be redressed by class action.
Procedural unconscionability, on the other hand, speaks to the individualized circumstances surrounding each contracting party at the time the contract was entered into. This is thoughtfully discussed by the court in Johnson v. Mobil Oil Corp., 415 F. Supp. 264, 268 (E.D.Mich. 1967):
The various factors considered by the courts in deciding questions of unconscionability have been divided by the commentators into "procedural" and "substantive" categories. See J. White & R. Summers, supra, at 118-30. Under the "procedural" rubric come those factors bearing upon what in the Weaver case was called the "real and voluntary meeting of the minds" of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The "substantive" heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable. According to J. White & R. Summers, supra, at 128:
Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.
The impression created by the cases we have examined involving an analysis of application of the common law doctrine of unconscionability is that the prerequisites for a finding of procedural unconscionability are too individualized to permit of class action proceedings.
Nevertheless at least two Florida cases suggest to the contrary by way of dicta. In *869 Avila South Condominium Association, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977) and in Point East One Condominium Corp. v. Point East Developers, Inc., 348 So.2d 32 (Fla.3d DCA 1977), the respective plaintiffs individually and as class representatives were to be permitted, on remand, to attempt to state an amended claim based upon unconscionability.
This seeming dichotomy raises two possibilities: either the courts in those cases assume that it is possible to cast allegations of procedural unconscionability in the mold of a class action or that such allegations are unnecessary to state a cause of action for unconscionability. This latter is suggestive of the recognition of a new procedural vehicle for enforcing a cause of action based upon unconscionability. As a matter of fact such a procedural vehicle is implicitly embodied in Section 711.66(5)(e), Florida Statutes (1975), which provides:
Any grant or reservation made by a declaration or cooperative document, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, shall be fair and reasonable.
However, that statute is not applicable to the instant case since it operates prospectively only. Avila South Condominium Association, Inc. v. Kappa Corp., supra.
We are left, then, with the former hypothesis; that is, that a cause of action for common law unconscionability may be stated and sustained in a class action. This necessarily implies that both procedural and substantive unconscionability are susceptible under appropriate circumstances of being pled and proved in a class action.
We therefore next address the question of whether the complaint sufficiently alleges substantive unconscionability. There is nothing intrinsically unfair or unreasonable in a lease of recreational facilities to adjacent property owners as tenants which lease may contain an escalation of rent clause based upon some appropriate measure of increases in the cost of living. However, where that lease requires payment of taxes and expenses in perpetuity and such payment is exacted from unit owners who may never avail themselves of the opportunity to utilize the rented facilities then the document is at least suspect. We duly note that the original lessor-developer obviously incurred expense in purchasing the land and constructing the facilities. All subsequent expense is borne by the lessees. Once the developer recoups his investment and a reasonable profit the burden should be on the developer to establish fairness and reasonableness when challenged by a tenant with standing. The term "with standing" in the context of common law unconscionability requires that, in addition to "standing" in the traditional sense, the tenant must be one in a position to allege and prove procedural unconscionability.
We conclude therefore that substantive unconscionability is susceptible of allegation and proof in a class action bringing into question the validity or continued enforceability of a lease of recreational facilities where the element of coercion regarding rental and other payments is present. It is further our conclusion that the amended complaint meets the test in this regard.
Finally we address the question of pleading and proving procedural unconscionability. To meet the threshold test of adequacy the allegations of procedural unconscionability must clearly demonstrate the absence of meaningful choice on the part of the plaintiff. Ordinarily this requires an examination into a myriad of details including plaintiff's experience and education and the sales practices that were employed by the defendant or his predecessor-assignor. However, the basic concept is "an absence of meaningful choice." While we foresee monumental obstacles of proof of such an allegation (which is a legal conclusion only) in a class action setting, we are not prepared to hold that the allegations of the amended complaint are per se insufficient. We note that we are not called upon here to determine evidentiary questions.
Limiting our holding to the narrow legal issue of whether the amended complaint states a cause of action for unconscionability *870 which may be maintained as a class action, we affirm the order of the trial court denying the motion to dismiss.
Petitioner questions, inter alia, the standing of the association comprised of the unit owners, to represent the class. The association was not a party to the lease. However, we construe Rule 1.221, Florida Rules of Civil Procedure, as authorizing the association to maintain actions on behalf of all unit owners concerning any matter of common interest, including, but not limited to, the common elements. See Imperial Towers Condominium, Inc. v. Brown, 338 So.2d 1081 (Fla. 4th DCA 1976). Such is the case here.
Other questions raised as to composition of the plaintiff class except as determined by the order on appeal are premature and our consideration must await appeal from a final judgment in which the rights of the class (and perhaps various members of the class) have been adjudicated by the trial court.
The order appealed from is affirmed in all respects.
AFFIRMED.
DOWNEY and HURLEY, JJ., concur.