857 So.2d 278 (2003)
GAINESVILLE HEALTH CARE CENTER, INC., as licensee and d/b/a Integrated Health Services at Gainesville, Appellant,
v.
Margaret WESTON, as Personal Representative of the Estate of Isabella Brooks, Appellee.
No. 1D02-5101.
District Court of Appeal of Florida, First District.
September 18, 2003.
Rehearing Denied October 23, 2003.
*280 R. Daniel Noey and Charles G. Eichhorn, Jr., of Dore, Lanier, Noey, & Fannin, Chartered, Jacksonville, for Appellant.
Gerald D. Schackow of Schackow & Mercadante, PA, Gainesville, for Appellee.
WEBSTER, J.
Appellant seeks review of a non-final order denying its motion to compel arbitration and abate appellee's civil action. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const.; Fla. R.App. P. 9.030(b)(1)(B), 9.130(a)(3)(C)(iv). The trial court held that appellant is not entitled to arbitration because the arbitration provision is unconscionable. We conclude that the trial court's determination that the arbitration provision is procedurally unconscionable is erroneous as a matter of law, and that appellee's alternative arguments regarding unenforceability of the arbitration provision are legally without merit. Accordingly, we reverse.

I.
Appellee, as personal representative of the estate of Isabella Brooks, filed a civil damage action against appellant, asserting claims based on negligence, wrongful death and violation of section 400.022, Florida Statutes (sometimes referred to as the nursing home residents' bill of rights). Appellant responded by filing a motion to compel arbitration and abate proceedings. Attached to that motion was a six-page document titled "Admission Contract," which appellant asserted had been executed on Isabella Brooks' behalf by her daughter, Barbara West, pursuant to a power of attorney previously executed by Ms. Brooks. That document includes the following provision:
VI. ARBITRATION
Except as prohibited by applicable law, pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services, any agreement between the parties, the provision of any other goods or services by *281 the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present, or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").
Immediately below this provision is the following:
THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF ITS TERMS
The signature lines are immediately below this language. In two memoranda opposing appellant's motion to compel arbitration, appellee raised a number of issues, including that the arbitration provision is procedurally and substantively unconscionable.
At the hearing held on appellant's motion to compel arbitration, the parties relied exclusively on the documents executed by Ms. West on her mother's behalf and the depositions of Ms. West and Tammy Miller, the employee of appellant with whom Ms. West dealt. Viewed in a light most favorable to appellee, those depositions establish that Ms. West and her sister (appellee) desired to transfer Ms. Brooks from the nursing home where she was residing to appellant's facility because they were dissatisfied with the care their mother had received at the first facility. Ms. Brooks was admitted to appellant's facility on February 9, 2001. After Ms. Brooks had been admitted to appellant's facility, Ms. West made an appointment to meet with Tammy Miller. That meeting occurred at appellant's facility on March 28, 2001.
The meeting between Ms. West and Ms. Miller took place during the former's lunch break. It probably lasted 15 to 20 minutes. During that meeting, Ms. West told Ms. Miller that she possessed a power of attorney on behalf of her mother, and executed several documents in that capacity. One of those documents was the Admission Contract. No substantive discussion occurred regarding that document. Ms. West (who is a high school graduate and, at the time, held a clerical/administrative position with a major healthcare provider) asked no questions about it; nor did she indicate that she had not read and understood it, as the acknowledgment immediately preceding the signature line recited (although she now claims that she did not read it before she executed it). Ms. West did not ask to be permitted to take the documents with her, so that she might study them or seek the advice of a lawyer or other more knowledgeable person before signing. Had she done so, that would have been permitted. It is clear that any haste associated with reviewing and signing the documents was self-imposed by Ms. West. There is no suggestion that the Admission Contract was presented on a "take-it-or-leave-it" basis; nothing to suggest that, had Ms. West requested to amend that document in some material respect, such a request would have been denied; and no evidence that Ms. West could not have obtained a satisfactory placement for her mother except by acquiescing to the terms of the contract.
During the hearing, the trial court observed that it appeared Ms. West had had "ample opportunity" to read the documents before she executed them. It noted that Ms. Brooks had been residing at appellant's *282 facility for several weeks before the documents were executed and that, had Ms. West been uncomfortable with the documents, she might have taken them home to study or discuss "with other family members or trusted friends or advisers." The court also noted that Ms. West could have had a lawyer review them, had she so desired. Notwithstanding those observations, however, at the conclusion of the hearing the trial court held that the Admission Contract was procedurally and substantively unconscionable. (It did not expressly hold that the arbitration provision contained in that document was, likewise, unconscionable, but it is clear that such was its intent.) It based that holding on the findings that the Admission Contract was a "contract of adhesion"; that nobody on behalf of appellant explained the terms of the arbitration provision to Ms. West, including what arbitration is and what rights appellee would be giving up; and that Ms. West did not understand the arbitration provision. More particularly, the trial court was of the opinion that appellant was obliged to explain to Ms. West that, by signing the Admission Contract, appellee would be giving up the right to a trial in a court; that appellee's choice of arbitrators would be limited to a group likely to be biased in favor of appellant; that the burden of persuasion on some types of claims would be greater than it would in a court; and that appellee would be subject to a different rule regarding the award of attorney's fees from that applicable in a court. The trial court incorporated its findings and holding by reference in a subsequent order denying appellant's motion to compel arbitration and abate the action. This appeal follows.

II.

A.
The arbitration provision in the Admission Contract provides that the Federal Arbitration Act (9 U.S.C. §§ 1-16) is to apply to any subsequent dispute. The parties have not specifically addressed whether that Act or the Florida Arbitration Code (ch. 682, Fla.Stat.) controls, and the trial court made no ruling on this question. However, for purposes of this appeal, the answer is irrelevant because the analysis is the same in either case.
According to our supreme court,
[u]nder both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.

Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citing Terminix Int'l Co. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997)). Accord John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094 (11th Cir.2003). Pursuant to the first element for consideration, it is relatively clear that the issue is "whether a valid written agreement to arbitrate exists," not whether a valid written contract containing an arbitration provision exists. Seifert, 750 So.2d at 636; John B. Goodman Ltd. P'ship, 321 F.3d at 1095-98. This focus on the validity of the arbitration provision, rather than of the contract containing the provision, is the result of the holding by the United States Supreme Court in a case construing the Federal Arbitration Act "that[,] in passing upon a[n] ... application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d *283 1270 (1967). It has become known as the "separability" doctrine. John B. Goodman Ltd. P'ship, 321 F.3d at 1095. See also Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344, 347 (Fla. 4th DCA 1992) (discussing "separability" pursuant to section 682.03 of the Florida Arbitration Code). While the trial court did not expressly hold that the arbitration provision, as opposed to the Admission Contract, was unenforceable, it is clear that such was its intent, and that the parties presented the issue that way. No issue has been raised as to either the existence of an arbitrable issue or waiver by appellant of the right to arbitrate. Accordingly, we are concerned only with whether the arbitration provision contained in the Admission Contract is "valid."
Both the Federal Arbitration Act and the Florida Arbitration Code permit a challenge to the validity of an arbitration provision based upon any state-law contract defense. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (holding that section 2 of the Federal Arbitration Act permits "generally applicable contract defenses, such as fraud, duress, or unconscionability, [to] be applied to invalidate arbitration agreements"); Medident Constr., Inc. v. Chappell, 632 So.2d 194, 195 (Fla. 3d DCA 1994) (fraud and other grounds for avoidance or invalidation of a contract may be applied to invalidate an arbitration agreement). In Florida, a court may decline to enforce a contract on the ground that it is unconscionable. E.g., Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999). Because the trial court refused to enforce the arbitration provision contained in the Admission Contract on the ground that it was unconscionable, we must review the propriety of that determination.
The trial court's decision was based in part on factual findings. Accordingly, it presents a mixed question of law and fact. The standard of review applicable to the trial court's factual findings is whether they are supported by competent, substantial evidence. E.g., State v. Wilford, 720 So.2d 617, 618 (Fla. 1st DCA 1998). However, the standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is de novo. See, e.g., Powertel, 743 So.2d at 573 (construction of contracts, including arbitration provisions, presents an issue of law, subject to de novo review); Connor v. State, 803 So.2d 598, 608 (Fla.2001) (the application of the law by the trial court to the facts found by it presents an issue of law, subject to de novo review).

B.
The concept of unconscionability has been described as "chameleon-like," Steinhardt v. Rudolph, 422 So.2d 884, 890 (Fla. 3d DCA 1982), and as "`so vague ... that neither the courts, practicing attorneys, nor contract draftsmen can determine with any degree of certainty ...' when it will apply in any given situation." Fotomat Corp. of Fla. v. Chanda, 464 So.2d 626, 628 n. 1 (Fla. 5th DCA 1985) (quoting from 15 Samuel Williston, A Treatise on the Law of Contracts § 1763A (3d ed.1972)). It has been referred to as a "safety valve in our law of contracts" to permit courts to refuse to enforce a contract when to enforce it "`would not be in keeping with the basic function of any courtthe administration of justice.'" Steinhardt, 422 So.2d at 890 (citation omitted). One Florida court has said that "[s]ynonyms for the term unconscionable include `shocking to the conscience' and `monstrously harsh.'" Garrett v. Janiewski, 480 So.2d 1324, 1326 (Fla. 4th DCA 1985) (quoting from Jeffery v. Weintraub, 32 Wash.App. 536, 648 P.2d *284 914 (1982), and Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wash.App. 439, 556 P.2d 552 (1976)).
In an early case explaining the modern application of unconscionability, the court said that "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir. 1965) (citing Campbell Soup Co. v. Wentz, 172 F.2d 80 (3d Cir.1948), and Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960)). Florida courts have adopted this description. E.g., Fotomat, 464 So.2d at 628; Steinhardt, 422 So.2d at 889; Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 867-68 (Fla. 4th DCA 1981). However, Florida courts have also emphasized that the concept is to be used with great caution:
[The concept of unconscionability] does not mean, however, that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him. Indeed, the entire law of contracts, as well as the commercial value of contractual arrangements, would be substantially undermined if parties could back out of their contractual undertakings on that basis. "`People should be able to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.'"
Steinhardt, 422 So.2d at 890 (quoting from 14 Samuel Williston, A Treatise on the Law of Contracts § 1632 (3d ed.1972)). Accord Fotomat, 464 So.2d at 630.
Before a court may hold a contract unconscionable, it must find that it is both procedurally and substantively unconscionable. E.g., Bellsouth Mobility LLC v. Christopher, 819 So.2d 171, 173 (Fla. 4th DCA 2002); Powertel, 743 So.2d at 574; Complete Interiors, Inc. v. Behan, 558 So.2d 48, 52 (Fla. 5th DCA 1990); Steinhardt, 422 So.2d at 889; Kohl, 398 So.2d at 867. To determine whether a contract is procedurally unconscionable, a court must look to the "circumstances surrounding the transaction" to determine whether the complaining party had a "meaningful choice" at the time the contract was entered. Williams, 350 F.2d at 449. Accord Steinhardt, 422 So.2d at 889; Kohl, 398 So.2d at 869. Among the factors to be considered are whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract, or whether the terms were merely presented on a "take-it-or-leave-it" basis; and whether he or she had a reasonable opportunity to understand the terms of the contract. As one Florida court has noted, while this may "require[ ] an examination into a myriad of details including [the complaining party's] experience and education and the sales practices that were employed by the [other party] ..., the basic concept is `an absence of meaningful choice.'" Kohl, 398 So.2d at 869. To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine *285 whether they are so "outrageously unfair" as to "shock the judicial conscience." See, e.g., Belcher v. Kier, 558 So.2d 1039, 1043 (Fla. 2d DCA 1990) (declining to equate "unconscionability" with mere "unreasonableness"); Free Unitholders of Outdoor Resorts at Orlando, Inc. v. Outdoor Resorts of Am., Inc., 460 So.2d 382, 383 (Fla. 2d DCA 1984); Steinhardt, 422 So.2d at 889.

III.
As discussed above, to determine whether a contract is procedurally unconscionable, a court must look to the "circumstances surrounding the transaction" to determine whether the complaining party had a "meaningful choice" at the time the contract was entered. Williams, 350 F.2d at 449. Accord Steinhardt, 422 So.2d at 889; Kohl, 398 So.2d at 869.

A.
It is apparent that a principal basis for the trial court's conclusion that the arbitration provision is procedurally unconscionable was its finding that the Admission Contract (and, therefore, the arbitration provision) is a "contract of adhesion." Either the trial court applied a legally incorrect definition of what constitutes a "contract of adhesion," or its finding in this regard is unsupported by competent, substantial evidence.
We have previously defined "an adhesion contract" as
a "standardized contract form offered to consumers of goods and services on essentially [a] `take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract."
Powertel, 743 So.2d at 574 (quoting Black's Law Dictionary (6th ed.1990)). As we said in Powertel, the fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of "meaningful choice." Id. at 574-75. Although the parties appear to have agreed in their legal memoranda filed in the trial court that the foregoing definition is correct, it is unclear whether the trial court used it. To the extent that it did, however, it is clear that the evidence was insufficient as a matter of law to permit the finding that the Admission Contract is a "contract of adhesion."
It appears that the Admission Contract was pre-printed. However, there is no evidence to support a finding that it was offered to Ms. West (or anybody else) on a "take-it-or-leave-it" basis. More particularly, there is nothing to suggest that, had Ms. West so requested, the arbitration provision would not have been deleted. There is also no evidence that Ms. West could not have obtained a satisfactory placement for her mother except by acquiescing to the terms as written. Certainly, nothing on the face of the Admission Contract permits such findings.

B.
The trial court also based its conclusion that the arbitration provision is procedurally unconscionable on its findings that nobody associated with appellant explained its terms to Ms. West, and that Ms. West did not understand the provision. More particularly, the trial court found that Ms. West was not told that, by signing the Admission Contract, appellee would be giving up the right to a trial in a court; that appellee's choice of arbitrators would be limited to a group likely to be biased in favor of appellant; that the burden of persuasion on some types of claims would be greater than it would in a court; *286 and that appellee would be subject to a different rule regarding the award of attorney's fees from that applicable in a court. These findings are in part unsupported by competent, substantial evidence. They are also insufficient, as a matter of law, to support the conclusion that the arbitration provision is procedurally unconscionable.

1.
There is no evidence to support the determination that appellee's choice of arbitrators would be limited to a group likely to be biased in favor of appellant. The evidence regarding the organization from which the arbitrators must be chosen according to the arbitration provision was limited to a stipulation. It recited that the organization "is the nation's largest[ ] nonpartisan, ... educational organization devoted to legal issues in the healthcare field"; that it "is now the nation[']s largest educational association devoted to legal issues in the health industry[,] with 9,000 members"; that, while it "is made up of primarily health-related attorneys who represent and counsel hospitals and hospital systems, physicians, managed care organizations, insurers, long term care facilities, home health agencies, and other healthcare entities on business, corporate and regulatory matters," it also has members who are "physicians, accountants, and healthcare executives"; and that its "Alternative Dispute Resolution Service ... [has] establish[ed] and maintain[s] panels of trained healthcare arbitrators, mediators, hearing officers and other dispute resolvers." No evidence was presented to indicate that Ms. West would be unable to obtain an unbiased arbitrator from the organization. Like the United States Supreme Court, in the absence of such evidence, "`[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (rejecting a claim that arbitration panels would be biased, and quoting from Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 634, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

2.
There is, likewise, no evidence to support the determination that appellee's burden of persuasion would be greater in arbitration than it would in a court on any of the claims raised in the complaint. The parties stipulated that, pursuant to the rules of the organization designated to arbitrate any disputes, punitive damages may only be recovered if "the arbitrator determines ... that there is clear and convincing evidence that the party against whom such damages are awarded is guilty of conduct evincing an intentional or reckless disregard for the rights of another party or fraud, actual or presumed." This standard is not different in substance from the standard generally applicable in Florida. See Owens-Corning Fiberglas Corp. v. Ballard, 749 So.2d 483, 486-87 (Fla. 1999). However, appellee argued in the trial court that the burden of persuasion required to obtain punitive damages pursuant to the claim for violation of the nursing home residents' bill of rights (§ 400.022) was only by the greater weight of the evidence. According to appellee, the arbitration provision was unconscionable because it failed to disclose that the burden of persuasion on such a claim would be greater in arbitration than it would in a court. Appellee also claimed that the arbitration provision was unconscionable because it failed to disclose that, while the arbitrator may award attorney's fees to the prevailing party, a party prevailing *287 in court on a damage claim for a violation of the nursing home residents' bill of rights must be awarded attorney's fees. Apparently, the trial court accepted these representations regarding a claim for violation of a nursing home resident's rights. Our review of the relevant statutory provisions, however, leads us to conclude that the representations were incorrect.
Appellee's claim for a violation of the nursing home residents' bill of rights (§ 400.022) is controlled by the 2001 versions of the relevant statutory provisions. Effective May 15, 2001, those provisions were amended in significant respects. Ch.2001-45, Laws of Fla. Section 400.0237 was created, providing (in subsection (4)) that "[t]he plaintiff must establish at trial, by clear and convincing evidence, its entitlement to an award of punitive damages." Ch.2001-45, § 9, at 229, Laws of Fla. In addition, section 400.023(1) was amended to provide that attorney's fees to a prevailing party "shall be awarded solely for ... injunctive or administrative relief and not for any claim or action for damages whether such claim or action is brought together with a request for an injunction or administrative relief or as a separate action, except as provided under s. 768.79 [relating to offers of judgment] or the Florida Rules of Civil Procedure." Ch.2001-45, § 4, at 221, Laws of Fla. Accordingly, there was no basis for the representations made by appellee in the trial court.

3.
The trial court's conclusion that the arbitration provision is procedurally unconscionable also appears to have been based upon either a misunderstanding regarding the law, or a misapplication of the law to the facts. This is because, as we have previously stated, to determine whether a contract is procedurally unconscionable, a court must look to the "circumstances surrounding the transaction" to determine whether the complaining party had a "meaningful choice" at the time the contract was entered. Williams, 350 F.2d at 449. Accord Steinhardt, 422 So.2d at 889; Kohl, 398 So.2d at 869. It appears that the trial court either failed to apply this law, or misapplied it to the facts.
There is competent, substantial evidence to support the trial court's findings that nobody associated with appellant explained the terms of the arbitration provision to Ms. West, and that Ms. West did not understand the arbitration provision. However, these are only two of the "circumstances surrounding the transaction." To determine whether Ms. West had a "meaningful choice" at the time she executed the Admission Contract, all of the circumstances must be considered. Although the trial court noted that Ms. West had had "ample opportunity" to read the documents before she executed them and that, had she been uncomfortable with them, she might have taken them home to study or discuss "with other family members[,]... trusted friends or advisers" or a lawyer, it does not seem to have given these facts any weight. Among the other circumstances which the trial court does not appear to have given any weight are the facts that Ms. West asked no questions about the arbitration provision and said or did nothing to indicate she had not read and understood that provision before she executed the contract (as the acknowledgment immediately above the signature lines recited); there is nothing to suggest that the contract was presented on a "take-it-or-leave-it" basis, or that, had Ms. West requested that the arbitration provision be deleted, it would not have been; there is no evidence that Ms. West could not have obtained a satisfactory placement for her mother except by acquiescing to the terms of the contract; and that, to the extent Ms. West did not, in fact, read the arbitration provision, nothing appellant did or said had any impact on her failure to do *288 so. In short, if one looks to all of the "circumstances surrounding the transaction," it is simply not reasonably possible to reach the conclusion that Ms. West had no "meaningful choice" at the time she executed the Admission Contract.

C.
To permit one to avoid the requirements of the arbitration provision on the basis of the evidence presented to the trial court would stand contract law on its head. One should not be permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous. To sanction such a result would be to render contracts worthless as a tool of commerce.
As the party seeking to avoid the arbitration provision on the ground of unconscionability, the burden was on appellee to present evidence sufficient to support that claim. E.g., Complete Interiors, 558 So.2d at 53; Meeting Makers, Inc. v. Am. Airlines, Inc., 513 So.2d 700, 701 (Fla. 3d DCA 1987). That burden encompassed the obligation to prove both procedural and substantive unconscionability. E.g., Bellsouth Mobility, 819 So.2d at 173; Powertel, 743 So.2d at 574; Complete Interiors, 558 So.2d at 52; Steinhardt, 422 So.2d at 889; Kohl, 398 So.2d at 867. Because appellee failed to present evidence sufficient to establish that the arbitration provision is procedurally unconscionable, she failed to carry this burden, and we need not decide whether the provision is substantively unconscionable. Having been afforded one opportunity to do so, she is not entitled to a second. Complete Interiors, 558 So.2d at 53 n. 4.

IV.
Perhaps anticipating our decision, appellee argues that, even if the trial court was incorrect on the unconscionability issue, the order denying appellant's request for arbitration should still be affirmed because the arbitration provision is unenforceable for other reasonsi.e., that the trial court reached the right result, but for the wrong reason. See, e.g., Robertson v. State, 829 So.2d 901, 906-07 (Fla.2002) (explaining what has come to be known as the "tipsy coachman rule"). First, appellee claims that there is no arbitration provision to enforce because the Admission Contract, by its own terms, terminated on the date of Ms. Brooks' death. However, in an identical case, the Second District Court of Appeal has held that such an issue is for the arbitrator, not for the trial court. Estate of Blanchard v. Central Park Lodges (Tarpon Springs), Inc., 805 So.2d 6, 8 (Fla. 2d DCA 2001) (citations omitted). We agree with the Second District. Second, appellee claims that the arbitration provision is unenforceable because it is illegal under federal law which prohibits a nursing home from accepting any additional consideration from a Medicare/Medicaid patient aside from the standard rate paid by Medicare/Medicaid. 42 C.F.R. § 483.12(d)(3). We have found no authority from any jurisdiction which holds that an arbitration provision constitutes "consideration" in this sense; nor do we believe that the federal regulation was intended to apply to such a situation. Finally, appellee claims that the arbitration provision is invalid and unenforceable because it constitutes an act of self-dealing in violation of appellant's fiduciary duty to Ms. Brooks. In the first place, no evidence was presented sufficient to establish the existence of a fiduciary duty owed by appellant to Ms. Brooks. Moreover, assuming that a fiduciary duty did exist, we have found no authority which holds that a fiduciary breaches that duty by entering into an otherwise valid arbitration agreement. *289 Arbitration agreements are a favored means of dispute resolution, and doubts concerning their scope should generally be resolved in favor of arbitration. E.g., Grektorp v. City Towers of Fla., Inc., 644 So.2d 613, 614 (Fla. 2d DCA 1994).

V.
The burden was on appellee to present evidence sufficient to establish that the arbitration provision is unconscionable and, therefore, unenforceable. Because that burden was not carried and appellee's alternative arguments regarding unenforceability of the arbitration provision are legally without merit, we reverse and remand with directions that the trial court enter an order granting appellant's motion to compel arbitration and abate the civil action.
REVERSED and REMANDED, with directions.
KAHN and DAVIS, JJ., concur.