861 So.2d 59 (2003)
Josephine ROMANO, by and through Lawrence ROMANO, Sr., Plenary Guardian, Appellant,
v.
MANOR CARE, INC., Manor Care of America, Inc., Manorcare Health Services, Inc., New Manorcare Health Services, Inc., Manorcare Health Services of Boynton Beach, Inc., and Manor Care of Boca Raton, Inc. (as to Manorcare Health Services-Boca Raton), Appellees.
No. 4D02-3852.
District Court of Appeal of Florida, Fourth District.
October 1, 2003.
Rehearing Denied January 12, 2004.
*60 Susan B. Morrison and Melanie L. Bossie of Wilkes & McHugh, P.A., Tampa, for appellant.
Christopher B. Hopkins and Andrew I. Glenn of Cole, Scott & Kissane, P.A., West Palm Beach, for appellees.
WARNER, J.
The husband and guardian of a nursing home resident filed a claim against Manor Care, the nursing home, for deprivation of the resident's rights as set forth in sections 400.022 and 400.023, Florida Statutes (2001). The nursing home moved to compel arbitration pursuant to the arbitration agreement signed by the husband upon his wife's admission to the home. The trial court determined that the parties had entered into a valid arbitration agreement. *61 Because the arbitration agreement contained provisions that defeat the remedial purposes of the statute, we hold that it was unenforceable and therefore reverse.
Josephine Romano, seventy-nine years old, was hospitalized after a fall in her home. Because Josephine was a poor surgical candidate, Lawrence, her husband, placed her at Manor Care, a nursing home for rehabilitation, when their first choice was unavailable. Lawrence admitted Josephine was mentally competent and participated in this decision.
On the day Josephine was admitted to the facility, the Romanos were not furnished any admission documents, but Lawrence was informed that such paperwork needed to be completed. The next day, a Manor Care representative gave him the admission documents to sign. He was presented with, and signed, eight separate documents, one of which was a six-page arbitration agreement. It was comprehensive in its terms, providing for the arbitration of all disputes, including those brought pursuant to statute. The agreement made specific provisions for discovery, including a prohibition of any depositions except those of expert witnesses, and provisions for the appointment of a former judge as an arbitrator and for the payment of costs. Neither party was entitled to attorney's fees in arbitration. The agreement also contained a limitation of liability provision which excluded punitive damages and limited non-economic damages to a maximum of $250,000. While the first page of the agreement stated that it contained a waiver of statutory rights, it did not inform the resident that she had a statutory right to sue for punitive damages which she was waiving in the agreement. The resident could cancel the agreement within three days of its signing.
The administrator who supervised the signing of the "Admission Packet" gave each document to Lawrence to sign but did not attempt to explain any of the terms used in the documents. The administrator testified that she really did not understand what the arbitration agreement meant. Although she said that a resident would not be ousted from the home if the arbitration agreement was not signed, she did not tell Lawrence that, nor did the agreement indicate the consequence of not signing it. In fact, Lawrence testified that the administrator simply told him that he had to sign the admission papers. He thought they all had to do with his wife's health care and admission to the facility.
Josephine resided at Manor Care for only one month. During that time, her physical condition deteriorated rapidly. After leaving the nursing home, Lawrence and Josephine filed suit against Manor Care alleging that the nursing home failed to provide Josephine with adequate health care and protective services, constituting a deprivation of her rights pursuant to sections 400.022 and 400.023. Manor Care moved to compel arbitration based upon the arbitration agreement. The trial court conducted an evidentiary hearing and found a binding arbitration agreement existed between the parties where Lawrence executed the agreement on behalf of Josephine but did not exercise his option to cancel it. The Romanos appeal the order compelling arbitration.
In ruling on a motion to compel arbitration, the trial court is limited to three inquiries: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citing Terminix Int'l Co. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997)). The Romanos' argument focuses on the first inquiry, namely whether the parties entered into a valid arbitration *62 agreement. Among their several arguments, they contend that the arbitration agreement is unenforceable because it is in violation of the remedial purpose set forth in the statute and does not provide adequate mechanisms for vindicating appellant's statutory rights.
To decline to enforce a contract as unconscionable, the contract must be both procedurally unconscionable and substantively unconscionable. See Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999) (citation omitted); Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 867 (Fla. 4th DCA 1981). Procedural unconscionability refers to the individualized circumstances under which the contract is entered, while substantive unconscionability deals with the unreasonableness and unfairness of the contractual terms themselves. See Kohl, 398 So.2d at 868. As we noted in Kohl,
Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconsicionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.
Id. at 868 (quoting Johnson v. Mobil Oil Corp., 415 F.Supp. 264, 268 (E.D.Mich. 1976)). The amount of either may vary. In Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000), the court explained:
"The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138 (Stirlen).) But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." (15 Williston on Contracts (3d ed. 1972) § 1763A, pp. 226-227; see also A & M Produce Co., supra, 135 Cal.App.3d at p. 487, 186 Cal.Rptr. 114.) In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.
Id. at 690; see also Burch v. Second Judicial Dist. Court of State ex rel. County of Washoe, 49 P.3d 647 (Nev.2002). Because the arbitration contract in this case is substantively unconscionable to a great degree, and we conclude that there is some irregularity in the contract formation amounting to procedural unconscionability of some degree, the contract is unenforceable.
Although parties may agree to arbitrate statutory claims, even ones involving important social policies, arbitration must provide the prospective litigant with an effective way to vindicate his or her statutory cause of action in the arbitral forum. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)); see also Flyer Printing Co. v. Hill, 805 So.2d 829, 831 (Fla. 2d DCA 2001). When an arbitration agreement contains provisions which defeat the remedial provisions of the statute, the agreement is not enforceable. See Flyer Printing, 805 So.2d at 831.
Sections 400.022 and 400.023 are remedial statutes, designed to protect nursing home residents. The Nursing Home Resident's *63 Rights Act, section 400.022, was originally enacted after a Dade County Grand Jury investigation of nursing homes revealed substantial elder abuse occurring in many nursing homes without any remedial action being taken. See Crotts & Martinez, The Nursing Home Resident's Rights Act-A Good Idea Gone Bad!, 26 Stetson L.Rev. 599 (1996). The law set up rights of residents, including the right to appropriate medical care, and requires nursing homes to make public statements of the rights and responsibilities of the residents. See § 400.022(1). To enforce these rights, the legislature provided each resident with a cause of action for their violation. See § 400.023(1). Because the legislature recognized that some of those rights may not be financially valuable, or that compensation may be minimal due to the age of the residents, the statute provides for the award of attorney's fees to assure the ability of the resident to enforce them. See id.[1] The legislature also provided for the award of punitive damages for gross or flagrant conduct or conscious indifference to the rights of the resident. See § 400.023(5). Moreover, there was no cap on pain and suffering damages in the statute.
This arbitration agreement would not vindicate the resident's statutory rights in any respect. In fact, the agreement would specifically deprive the resident of remedies that the legislature felt were important to the reduction of elder abuse in nursing homes. While it was the intent of the remedial policies of the legislation to permit the award of punitive damages for certain conduct, the agreement prevented the arbiters from awarding such damages. Nor could the arbiters award attorney's fees to the successful resident even though the ability to make such an award was intended by the legislature. For instance, according to the allegations of the complaint, Josephine was only in the nursing home for thirty days but developed bed sores and received grossly substandard care. Given her advanced age, compensatory damages may be small. Under the arbitration agreement, in order to vindicate her rights, she would have to pay for an attorney herself, the cost of which may prevent her from pursuing a rightful claim. Because the arbitration agreement fails to allow the arbiter to award either attorney's fees or punitive damages, it does not permit the nursing home resident to vindicate her statutory rights. Therefore, the agreement is unenforceable. See Flyer Printing, 805 So.2d at 831. Because of the limitations contained in the arbitration agreement, it takes away any effective enforcement of the statutory rights of the resident.
As to procedural unconscionability, it is true that the arbitration agreement was not "hidden in the fine print." It was presented to Lawrence as simply another document required to be signed as part of the admission process. Both Lawrence and his wife are elderly, and while Lawrence owned his own business, there was no showing that he had legal training to understand the rights he was signing away for his wife. Moreover, he was being asked to sign these documents after his wife was already admitted to the nursing home without being told that his failure to sign them would not affect her care or her ability to stay in the home. Given the ages of the resident and her husband and the circumstances surrounding signing of the agreement, we conclude that some quantum of procedural unconscionability is *64 shown. Because of the egregious substantive unconscionability of the terms of the agreement, the test of Kohl and Powertel is met, the agreement is unconscionable and thus unenforceable.
We reverse the order compelling arbitration and remand for further proceedings in the judicial forum.
STONE and STEVENSON, JJ., concur.
NOTES
[1] Although this provision has since been repealed, it was in effect at the time the cause of action in this case accrued.