891 So.2d 562 (2004)
Keith M. SHARICK, Appellant,
v.
SOUTHEASTERN UNIVERSITY OF THE HEALTH SCIENCES, INC., Dr. Michael Ham-Ying, Dr. Matthew A. Terry, and Dr. Arnold Melnick, and Donald A. Tobkin, Appellees.
No. 3D03-2949.
District Court of Appeal of Florida, Third District.
November 10, 2004.
Rehearing Denied February 9, 2005.
*563 Fazio, Dawson, Disalvo, Cannon, Abers, Podreca, Fazio & Carroll, Fort Lauderdale; Wasson & Associates and Roy D. Wasson and Annabel C. Majewski, Miami, for appellant.
Panza, Maurer & Maynard and Thomas F. Panza and Mark A. Hendricks, Fort Lauderdale, for appellees Southeastern University of the Health Sciences, Inc., Dr. Michael Ham-Ying, Dr. Matthew A. Terry, and Dr. Arnold Melnick; Poltorack, Shafran & Falzone and Ronald D. Poltorack, Fort Lauderdale, for appellee Donald A. Tobkin.
Before GREEN, FLETCHER, and WELLS, JJ.
WELLS, Judge.
Keith Sharick appeals an order enforcing a settlement agreement which he claims his attorney had no authority to enter. The trial court, which did not resolve the authorization dispute, nonetheless ordered enforcement of the purported agreement. We reverse because the attorney's authority to settle is dispositive and because the record demonstrates no clear and unequivocal grant of authority to the attorney.
In 1993, Sharick was dismissed from the College of Osteopathic Medicine (Southeastern) two months short of graduation. He brought suit and prevailed in a jury trial against Southeastern on a single claim of breach of implied-in-fact contract but was able to recover only damages relating to tuition expenses because the trial court disallowed his demand for, among other things, past and future lost earning capacity. In Sharick v. Southeastern Univ. of Health Sciences, Inc., 780 So.2d 136 (Fla. 3d DCA 2000), we remanded the case to provide Sharick with an opportunity to prove loss of earning capacity.
To that end, on October 30, 2002, the parties attended court ordered, pre-trial mediation. At that time, Southeastern offered Sharick $600,000 and a D.O. degree to settle. Sharick unequivocally rejected this offer despite the urging of the mediator (a former circuit court judge), defense counsel, and his own attorney, Donald Tobkin. Two days later, Sharick's attorney, who had been handling this case on a contingency fee basis for over ten years, advised the trial court that he felt the settlement proposal made at mediation "was beyond reasonable, would be one hundred percent totally impossible to achieve in the imminent retrial on damages, and [that] no reasonable competent individual would have refused." Tobkin then asked the trial court to appoint a guardian ad litem for his own client for the purpose of assisting the trial court in determining if the settlement offer made and unequivocally rejected by his client at mediation, was "fair, reasonable and in [Sharick's] best interests."[1] The trial court, *564 without evidence to suggest Sharick was unable to act in his own best interests or was incompetent, granted the motion, appointing a guardian ad litem to "represent the interests" of this mentally competent, adult litigant.[2]
On January 23, 2003, the guardian, another former circuit court judge, issued a report confirming Sharick to be "intelligent, alert, not under the influence of any drugs or medications and completely familiar with all the facts in this case." He found Sharick to be "perfectly competent to make his own decision as to whether to accept this offer or not." The guardian also confirmed that Sharick and his attorney, Tobkin, "are at odds and extremely hostile to one another," and that Tobkin was pressuring Sharick to settle: "Mr. Tobkin told the plaintiff that if he does not accept this offer he intends to withdraw from the case and place a charging lien on the file."
Although Sharick continued to reject settlement, Tobkin did not withdraw as threatened. Tobkin continued, instead, to negotiate with opposing counsel, telling opposing counsel that Sharick had given him express authority to settle for any amount above $780,000 and a D.O. degree.
On February 25, 2003, one week before the scheduled damages trial, Sharick appeared for an up-dated deposition. He was met by Tobkin, settlement agreement for $785,000 and a D.O. degree in hand. For the next forty five minutes Tobkin attempted to persuade Sharick, in a transcribed and videotaped "discussion," to accept the settlement he had negotiated. Sharick refused, repeatedly denying that Tobkin had authority to settle for him. At the conclusion of this discussion, Sharick's deposition commenced with opposing counsel spending at least twenty minutes attempting to convince Sharick  in Tobkin's presence and without objection  to accept the settlement proposal. Sharick refused to budge and the deposition proceeded. Some time after the deposition concluded and both attorneys had left, Sharick returned and stated to the court reporter that he had come "back to settle." The following morning, after having been informed of this comment, Tobkin filed an emergency motion to enforce the agreement that he had previously negotiated with opposing counsel. He obtained a hearing on this motion for later that same afternoon and attempted to notify Sharick by leaving a message with Sharick's mother. Sharick claims not to have received notice and did not appear at the hearing. The trial court ordered enforcement of the settlement agreement.
Sharick, using another attorney, moved for rehearing.[3] At the hearing on that motion, Tobkin reiterated his earlier testimony *565 regarding his authority to settle on Sharick's behalf. Sharick denied conferring any such authority. Opposing counsel testified that although Tobkin had informed him in late January or early February that he had authority to settle for Sharick, he did not believe that the case was settled when Sharick appeared for his deposition in late February. The trial court, concluding that Tobkin's disputed authority to settle was "not dispositive," again ordered enforcement of the agreement because there was "no dispute that Mr. Tobkin on behalf of the Plaintiff did submit a verbal offer of Settlement. . . [and] that after conferring with his client [opposing counsel] accepted the offer . . . [resulting in] an enforceable settlement Agreement." The trial court's conclusion that Sharick's authorization was "not dispositive," was the critical error made in this case and the reason the case must be reversed.
A party seeking to compel enforcement of a settlement bears the burden of proving that an attorney has the clear and unequivocal authority to settle on the client's behalf. See Cross-Aero Corp. v. Cross-Aero Serv. Corp., 326 So.2d 249, 250 (Fla. 3d DCA 1976); see also Weitzman v. Bergman, 555 So.2d 448, 449-50 (Fla. 4th DCA 1990) (noting that "it is the burden of the party seeking to compel the settlement . . . to show that the attorney had authority to settle the case"); Jorgensen v. Grand Union Co., 490 So.2d 214, 215 (Fla. 4th DCA 1986) ("[t]he law is clear that a client's express authority given to his attorney to settle his cause of action must be clear and unequivocal"). Employment of an attorney to represent a client does not confer on the attorney implied or apparent authority to compromise or settle the client's claims. E.g., Cross-Aero Corp., 326 So.2d at 250.
An attorney's belief that he or she has the authority to settle does not alone establish such authority. See Weitzman, 555 So.2d at 449 ("[c]aselaw indicates that courts have been very stringent in what they find to be a `clear and unequivocal' grant of authority"); Dixie Operating Co. v. Exxon Co., U.S.A., 493 So.2d 61, 63 (Fla. 1st DCA 1986) (declining "to place the determination of whether clear and unequivocal authority was given under the control of the attorney exercising the authority on the basis of good faith belief when a dispute over that authority arises between the attorney and client").
Absent clear and unequivocal authority from Sharick, Tobkin could make neither a binding offer nor a binding agreement on Sharick's behalf. Tobkin's lack of authority to settle on Sharick's behalf is, therefore, dispositive. We agree with Sharick that there is no evidence of a clear and unequivocal grant of authority to Tobkin to settle on Sharick's behalf. Sharick consistently denied Tobkin's authority to bind him to a settlement and repeatedly resisted the efforts of two former circuit court judges, one a mediator one a guardian ad litem, opposing counsel and his own attorney, to persuade him to accept settlements Tobkin supposedly negotiated with his blessing. When viewed in context of the facts outlined above, remand for a determination on the issue of authorization would serve no purpose, because a clear and unequivocal grant of settlement authority simply cannot be found.[4] Accordingly, the order enforcing *566 settlement is reversed and this matter remanded for a damages trial below.
NOTES
[1] While the Rule Regulating The Florida Bar 4-1.14, addresses a "client under a disability," there is nothing in that Rule to indicate that it may be used as a mechanism to bend a competent client's will:

(a) Maintenance of Normal Relationship. When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) Appointment of Guardian. A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.
[2] Although the order appointing the guardian states only that Tobkin's motion is granted, the guardian's report states the purpose for which he was appointed as "to represent the interests of the plaintiff who had been given a settlement offer by the defendants."
[3] Tobkin's representation subsequently was terminated by court order. Shortly thereafter, he filed for bankruptcy.
[4] Although the trial court concluded that Sharick "lack[ed] credibility," we find no support in the record for the reasons given for this conclusion. See Gainesville Health Care Center, Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003) (observing that the standard of review applicable to a trial court's factual findings is whether they are supported by competent substantial evidence). According to the trial court, Sharick lacked credibility because he testified that he had retained and paid another attorney, John Kelner, when he had not. Contrary to the trial court's conclusion, Kelner, himself, testified that Sharick had retained and paid him. The trial court also concluded that Sharick lacked credibility because he testified that the court had appointed a guardian ad litem to pressure him into settlement. Sharick did not so testify. Sharick testified that it appeared to him that Tobkin (not the court) used the motion to appoint a guardian to pressure him into settlement:

Q. And did [Tobkin] pressure you in any way after that mediation to accept settlement?
A. Yes, he did.
Q. How did he do that?
A. He filed a motion with this court appointing  asking this court to appoint a guardian ad litem to represent me. And right before that motion [to appoint a guardian] was to be heard by this judge, he asked me, do you want to take the $600,000 and D.O. degree. And he said he would drop the guardian ad litem request, and I told him I would not do that. And he told me he was going forward with the guardian ad litem.
Q. Did it appear to you that he was using the imposition of a guardian as leverage to get you to settle?
A. Yes.
(Emphasis added).