CORTINAS, J.
Bank of America Corporation (BAC), Bank of America, N/A (BOA), Banc of America Investment Services (BAIS) (collectively, BOA appellants), and National Financial Services, LLC (NFS) * seek review of the trial court’s order denying their motions to compel arbitration. We reverse.
In January 2000, James Mahan opened a BAIS money market account (“account”) and an associated BOA checking account. To do so, he completed a four-page application, including an optional margin borrowing section, which twice stated that the customer agreement would require all disputes be settled by binding arbitration. Mr. Mahan subscribed both provisions, which were the same font, size, and case as the body of the application but were itali *1136 cized and set off by paragraph. He then acknowledged receiving the agreement containing the arbitration provision.
The “Arbitration” provision in the agreement states, in bold, that “any disputes with respect to the [agreement] are subject to arbitration, except for disputes limited to matters arising between [the customer] and [BOA] concerning the checking account ... or any other aspect of the relationship that is solely within the purview of [BOA].”
In the two months after the account was opened, Mahan used it for a variety of transactions before the one at issue, in which he exchanged shares of stock from the account for checks in excess of a million dollars, which he deposited. However, a stop payment order was issued on these checks which caused the account to become overdrawn. To remedy the overdraft, BAIS liquidated additional shares in the account. This action, and another by BAIS also involving the stop payment of a check, formed the basis of Mr. Mahan’s action against the appellants. Appellants responded to Mr. Mahan’s complaint with a motion to compel arbitration, which the trial court denied because “the reference in Plaintiffs [application] with respect to the arbitration clause, [was] not in bold, not in the box, and not different, and therefore, not binding on Plaintiff.”
The trial court invalidated the arbitration language of the application and agreement because its formatting supposedly made it procedurally unconscionable. We review such questions de novo. See Briceño v. Sprint Spectrum, L.P., 911 So.2d 176, 179 (Fla. 3d DCA 2005); Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999). To invalidate the arbitration provision on the grounds of uncon-scionability, the trial court needed to find the provision both procedurally and substantively unconscionable. Murphy v. Courtesy Ford, LLC, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006) (citing Powertel, 743 So.2d at 574). “The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms.” Powertel, 743 So.2d at 574. Substantive unconscion-ability, on the other hand, relates to the reasonableness and fairness of the contract itself. See id. Because the arbitration provisions in this case suffered from no procedural malady, we do not reach the question of substantive unconscionability. The failure of the arbitration provision to leap off the page does not equate to procedural unconscionability. Here, for example, the arbitration provisions in the application were italicized and contained in their own paragraph, set apart by blank space from the rest of the application’s text.
We recognize that even a well-defined arbitration provision may be procedurally unconscionable if contained within a contract of adhesion. However, the factors that would invalidate an otherwise valid provision are not present in this case. In Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003), the husband of a nursing home resident sought to avoid an arbitration provision in his wife’s nursing home agreement. There, the husband “was being asked to sign ... documents after his wife was already admitted to the nursing home without being told that his failure to sign them would not affect her care or her ability to stay in the home.” Id. at 63. Also in Romano, the arbitration agreement was a comprehensive six-page document that was itself but one of eight separate documents the husband was told to execute. Similarly, in Prieto v. Healthcare & Retirement Corp. of America, 919 *1137 So.2d 531 (Fla. 3d DCA 2005), while the plaintiffs father was being transported from a hospital to a nursing home, plaintiff was given a packet of nursing home agreements to execute, including one requiring arbitration.
Unlike in Romano and Prieto, the arbitration provision agreed to by Mr. Mahan, who is by all accounts a sophisticated businessman, was a short and simple paragraph that was itself part of a short and simple four-page application. Even more compelling is that, prior to completing the application, Mr. Mahan had nothing invested with appellants. By contrast, the plaintiffs in Romano and Prieto were confronted with the possibility of a close family member losing necessary healthcare services. See also Powertel, 743 So.2d at 575 (“[T]he customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchased from Powertel.”).
In conclusion, we find that the simple, self-contained, and italicized arbitration provision, found twice in the four-page application, sufficiently put Mr. Mahan on notice that disputes with respect to the account would be subject to mandatory arbitration. Accordingly, the arbitration provisions were not procedurally unconscionable.
Reversed and remanded.

 NFS acts as a clearing house for BAIS.