Robin PETERSEN, Plaintiff,

v.

The FLORIDA BAR, et al., Defendants.

Case No. 6:10–CV–86–ORL–WHS–BWN.

United States District Court,
M.D. Florida.

June 28, 2010.

Douglas R. Beam, Leslie Allyn Davis, Douglas R. Beam, PA, Melbourne, FL, for Plaintiff.

Barry Scott Richard, Bridget Kellogg Smitha, Greenberg Traurig, LLP, Tallahassee, FL, for Defendants.

## ORDER

WILLIAM H. STEELE, Chief Judge.

This matter comes before the Court on Defendants' Motion to Dismiss Amended Complaint (doc. 35). The Motion has been briefed and is now ripe for disposition.

### I. Background.

Plaintiff, Robin Petersen, is a licensed Florida attorney who commenced this action for declaratory and injunctive relief against numerous defendants, including the Florida Bar, the Florida Bar's executive director John F. Harkness, Jr., and more than four dozen individual members of the Florida Bar Board of Governors in their official capacities. This dispute, in which Petersen alleges ongoing deprivations of his constitutional rights, relates to the Florida Bar's utilization of a peer review criterion in evaluating attorney applications for recertification in particular le-

gal specialties, as well as its refusal to disgorge unfavorable peer review materials to Petersen in connection with the denial of his application for recertification as an elder law specialist.

According to the well-pleaded facts in the Amended Complaint (doc. 27),[1] Petersen has been certified in Florida as an elder law specialist since 1998. That certification is beneficial to Petersen's law practice in attracting clients and obtaining referrals. Without that certification, his practice would be, in his words, "diminished." (Doc. 27, at 6.) It is not, however, mandatory for Petersen to maintain a certification as an elder law specialist in order to practice elder law in the state of Florida. To the contrary, the Rules Regulating the Florida Bar unambiguously provide that "[n]o lawyer shall be required to be certified before practicing law in any particular area" and that "[p]articipation in the [certification] plan shall be on a voluntary basis." Rule 6–3.4(b),(d). Thus, with or without certification, Petersen remains a licensed Florida attorney who is free to engage in the unfettered practice of his specialty of elder law throughout Florida, representing any clients and appearing before any courts in the state as he may see fit with no substantive restrictions on his ability to practice law. The difference is, apparently, that the certification is useful to Petersen in marketing himself, developing clients, and attracting referrals.

By its terms, the Florida elder law certification lapses every five years, at which time the attorney must apply for recertification if he or she wishes to obtain board certification for another term.[2] In May 2008, Petersen completed and submitted his second Florida elder law recertification application (having previously been recertified once in or about 2003). On the final page of that application, just above the signature and notary blocks, was a pre-printed, four-paragraph section bearing the heading "Release." One paragraph was set apart from the others, and stated in large, bold-faced, all-capitalized type the following language:

"I FURTHER UNDERSTAND THAT THE PEER REVIEW PROCESS IS UNABLE TO SERVE ITS PURPOSE UNLESS THE INDIVIDUALS FROM WHOM INFORMATION IS REQUESTED ARE GUARANTEED COMPLETE CONFIDENTIALITY. BY APPLYING FOR RECERTIFICATION, I EXPRESSLY AGREE TO THE CONFIDENTIALITY OF THE PEER REVIEW PROCESS AND EXPRESSLY WAIVE ANY RIGHT TO REQUEST ANY INFORMATION OBTAINED THROUGH PEER REVIEW AT ANY STAGE OF THE CERTIFICATION PROCESS."

(Doc. 35, Exh. A, at 4.)[3]

The exhibit reflects that Petersen signed the application form, as presented

---

**1.** Because this matter comes before it on a Rule 12(b)(6) motion, this Court will "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff[ ]," subject to the caveat that it is not "required to accept the labels and legal conclusions in the complaint as true." *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1291 (11th Cir.2010); *see also Oxford Asset Management, Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6)). To survive a

motion to dismiss for failure to state a claim, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards,* 602 F.3d at 1291 (citations and internal quotation marks omitted).

**2.** Rule 6–3.6(a) of the Rules Regulating the Florida Bar expressly provides that no certificate of legal specialization shall last for a period longer than five years.

**3.** The quoted language was not recited in the Amended Complaint; however, the text of the

and without modifying or deleting any of its terms. (*Id.*) Petersen does not allege that his signature is not genuine, that defendants unduly pressured him to sign the document, that he did not have a full and fair opportunity to read it, or that he was in any way rushed or impaired during the application process. Similarly, the Amended Complaint is devoid of allegations that Petersen balked at this waiver provision, that he did not understand it, or that he attempted to negotiate with the Florida Bar over its inclusion in his recertification application. To be sure, the Amended Complaint includes a conclusory allegation that "[w]ithout signing the application, including this 'waiver' clause, Mr. Petersen could not apply for recertification" (doc. 27, at 6); however, this bald assertion, unsupported by any specific factual allegations, constitutes just the kind of self-serving, unwarranted deduction of fact that federal courts do not accept as true for purposes of a Rule 12(b)(6) motion. There are no allegations that Petersen inquired of the Florida Bar about the necessity of this waiver provision, that any representative of the Florida Bar ever informed him that the waiver was a mandatory condition of his recertification application, or the like. By all appearances, then, the statement in the Amended Complaint that Petersen could not apply for recertification without submitting to the waiver clause amounts to nothing more than his own unadorned surmise and conjecture, untethered to any discernable facts pertaining to defendants' actions or statements. Accordingly, this allegation need not and will not be credited for purposes of the Motion to Dismiss.[4]

The peer review requirement referenced in the waiver language was prescribed by Rule 6–20.4(c) of the Rules Regulating the Florida Bar, which provides that, to be eligible for recertification as an elder law specialist, an applicant must submit to peer review. That peer review process requires the applicant to name five other attorneys outside his or her law firm "who can attest to the applicant's special competence and substantial involvement in the field of elder law," and authorizes Florida bar officials to "make such additional inquiries as they deem appropriate to complete peer review." Rule 6–20.3(d). Those same rules explain that the purpose of peer review is "to solicit information to assess competence in the specialty field, and professionalism and ethics in the practice of law." Rule 6–3.5(c)(6). Notably, while the rules are clear that peer review is "mandatory for all applicants," *id.*, they nowhere specify that waiver of the right to obtain such materials is likewise mandatory. At any rate, from a fair reading of the rules, it is evident that the peer review process is not a mere formality; to the contrary, the rules state that "[a]n applicant otherwise qualified may be denied certification on the basis of peer review." *Id.* That is precisely what happened here.

---

application form is properly considered at this time because it is referenced in and central to the Amended Complaint, and its contents are not in dispute. *See, e.g., Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999) (on a Rule 12(b)(6) motion, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal").

4. *See, e.g., Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (complaint that "tenders naked assertions devoid of further factual enhancement" cannot survive motion to dismiss) (citation and internal quotation marks omitted).

The well-pleaded allegations of the Amended Complaint reflect that the Florida Bar's Elder Law Certification Committee recommended in June 2009 that Petersen's recertification application be denied, solely on the basis of unfavorable peer review information, which included "poor" and "below average" ratings as to his reputation in the legal community for ethical conduct and professionalism. (Doc. 27, at 9–10.) In July 2009, the Florida Bar Board of Legal Specialization and Education affirmed the Certification Committee's recommendation and denied Petersen's application for recertification, again based exclusively on negative peer review. Petersen apparently pursued and continues to pursue administrative appeals of that determination, but has not succeeded in overturning that denial. At all stages of the process, Petersen has requested that Florida Bar authorities provide him with peer review materials used in the recertification decision, and has insisted that his unambiguous written waiver of his right to obtain such materials is invalid because he did not execute it voluntarily. In express reliance on his waiver, however, Florida Bar authorities have steadfastly refused to furnish confidential peer review materials to Petersen during his administrative appeals. As a result, Petersen does not know who made negative peer review comments about him during the recertification process, much less the specific contents of those comments.

Based on the foregoing factual allegations, Petersen brought this § 1983 action, asserting violations of a host of his constitutional rights, including procedural due process under the Fourteenth Amendment, substantive due process under the Fourteenth Amendment, freedom of speech under the First and Fourteenth Amendments, and access to the courts under the First and Fourteenth Amendments. A brief synopsis of the stated rationale for each claim will help frame the analysis of defendants' Rule 12(b)(6) motion. In his procedural due process claim (Count 1), Petersen maintains that defendants' failure to provide him with negative peer review materials, despite their reliance on those materials to deny him recertification, effectively deprives him of due process in his administrative challenge of that recertification denial. (Doc. 27, at 12–14.) Petersen's substantive due process claim (Count 2) reiterates his complaint about the confidentiality of peer review materials, but also objects that the peer review criterion utilized in the recertification process "is so vague that it is arbitrary" because concepts such as "reputation for professionalism" are subjective, mushy and standardless. (*Id.* at 14–16.) In the free speech claim (Count 3), Petersen maintains that the peer review criterion is unconstitutionally vague and overbroad, such that virtually any communicative speech or conduct could become the subject of negative, secret peer review. (*Id.* at 17–19.) It appears from the Amended Complaint that Petersen is contending that his free speech rights are violated by the very existence of a peer review element to the recertification process, as well as by the confidentiality of the peer review materials collected in this case. Finally, in his claim for denial of the right of court access (Count 4), Petersen maintains that he has potentially viable claims against those persons who provided negative peer review statements about him. According to Petersen, he may wish to sue those individuals for saying unflattering things about him to Bar officials; however, defendants' refusal to divulge details about the identities of peer reviewers and the substance of their comments has effectively stymied his efforts to do so because Petersen cannot discern whom to hale into court or what specific negative comments were made about him.

Defendants have now moved to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.

## II. Analysis.

As noted, several of Petersen's constitutional claims relate to defendants' refusal to furnish negative peer review materials to him on grounds of confidentiality. Indeed, as pleaded in the Amended Complaint, Petersen's procedural due process claim (Count 1) turns entirely on the secrecy of the peer review materials utilized by the Florida Bar to deny his recertification application. Likewise, Petersen's access to courts claim (Count 4) rests exclusively on defendants' refusal to turn over peer review materials to him, thereby blocking his efforts to identify and initiate court proceedings against those who made unfavorable statements about him to the Florida Bar. Although his substantive due process (Count 2) and free speech (Count 3) claims challenge the validity of the peer review criterion generally (*i.e.*, that the Florida Bar should not condition recertification decisions on a purportedly vague, standardless and overbroad peer review assessment), Petersen's Amended Complaint also discusses defendants' failure to turn over peer review information in the context of those claims, such that the nondisclosure of those materials is a component of Counts 2 and 3, as well.

### A. *Validity and Effect of Waiver.*

Insofar as Petersen seeks to transform the Florida Bar's withholding of confidential peer review materials from him into constitutional violations, defendants argue

that his claims should be dismissed on principles of waiver. The recertification application that Petersen signed included a prominent, unambiguous waiver of his right to obtain that information. In particular, Petersen "expressly agree[d] to the confidentiality of the peer review process and expressly waive[d] any right to request any information obtained through peer review at any stage of the certification process." (Doc. 35, Exh. A, at 4.) Defendants maintain that Petersen's waiver is binding and effective to bar all of his claims predicated on the withholding of peer review information. Petersen retorts that this waiver is unenforceable and ineffectual because he entered into it involuntarily.

 Under Florida law, as elsewhere, a waiver is defined as "the voluntary and intentional relinquishment of a known right." *Raymond James Financial Services, Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla.2005). With respect to waivers of constitutional rights,[5] Florida courts perform two inquiries. "First, the court must determine if the waiver was voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.... Second, the court must determine whether the waiver was executed with a full awareness of the nature of the rights being abandoned and the consequences of their abandonment." *Sliney v. State*, 699 So.2d 662, 668 (Fla.1997) (citations omitted); *see also Hunter v. Moore*, 304 F.3d 1066, 1071 (11th Cir.2002) ("Waiver of a constitutional right will only be found if the record discloses its intentional relinquishment or abandonment.") (citation and internal quo-

---

5. There is no doubt that parties may "waive fundamental constitutional rights that protect their liberty as well as their property." *Hartwell v. Blasingame*, 564 So.2d 543, 545 (Fla. 2nd DCA 1990); *see also Chames v. DeMayo*, 972 So.2d 850, 861 (Fla.2007) (recognizing "trend toward allowing waivers of constitu-

tional rights"); *Infinity Design Builders, Inc. v. Hutchinson*, 964 So.2d 752, 755 (Fla. 5th DCA 2007) ("As with any other constitutional right, the right of access to the courts may be relinquished."). Petersen does not suggest otherwise.

tation marks omitted). The validity of a waiver must be ascertained by consideration of the totality of the circumstances. *See Jean–Louis v. Forfeiture of $203,595.00 in U.S. Currency,* 767 So.2d 595, 598 (Fla. 4th DCA 2000).

■■ The critical question presented is whether Petersen's waiver was voluntary.[6] He insists that it was not. In the Amended Complaint, Petersen alleges as follows: "As Plaintiff was required to sign a 'waiver' of any right to request peer review information as a condition of his recertification application, Plaintiff did not voluntarily waive or relinquish his constitutionally protected rights." (Doc. 27, at 12.) There are two glaring weaknesses with this contention. First, as already discussed *supra,* the Amended Complaint alleges no specific facts demonstrating that signing the waiver was a mandatory precondition to Petersen's application; rather, the pleading simply alleges that the waiver was "required" as a conclusory, unwarranted deduction of fact. That allegation is too flimsy and devoid of substance to prevent dismissal under Rule 12(b)(6). Even taking the well-pleaded factual allegations of the Amended Complaint in the light most favorable to Petersen, we have no inkling what the Florida Bar would have said if Petersen had asked that the waiver provision be deleted or reworded. More to the point, there is no suggestion

that he ever made such a request. Further, there are no factual allegations in the Amended Complaint that defendants informed Petersen that his application would be summarily rejected in the absence of a waiver, that Petersen unsuccessfully attempted to negotiate a modification to the waiver language, or even that Petersen was opposed to, unhappy with, or mildly troubled by the waiver language at the time he signed the application. Simply put, the specific allegations in the pleading provide no factual basis for the conclusory statement that execution of the waiver was "required" at all costs.

■ Second, and more fundamentally, even if the Amended Complaint did set forth factual allegations that the waiver language was presented to Petersen as a mandatory requirement for certification, his voluntariness argument would nonetheless fail. The law is quite clear that contract terms are not automatically stripped of validity when the drafter proffers them on a take-it-or-leave-it basis. To the contrary, Florida courts have routinely upheld and enforced waivers contained in such agreements in analogous circumstances. *See, e.g., VoiceStream Wireless Corp. v. U.S. Communications, Inc.,* 912 So.2d 34, 40 (Fla. 4th DCA 2005) (fact that wireless provider drafted contract containing waiver of jury trial right, with no ability for dealer to negotiate terms, did not render

---

**6.** The other prong of the waiver analysis is not at issue here. Petersen has not contended and—given his legal training and the prominent, straightforward nature of the waiver language—could not plausibly contend that the waiver is invalid on grounds that he did not understand the nature of the rights he was waiving and the consequences to him of such relinquishment. Furthermore, it would be no defense to the waiver argument for Petersen to argue that he never read the release/waiver provision before signing it. A party is not "permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and

understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous." *Gainesville Health Care Center, Inc. v. Weston,* 857 So.2d 278, 288 (Fla. 1st DCA 2003). "To sanction such a result would be to render contracts worthless as a tool of commerce." *Id.* Because the sole issue presented as to the validity of Petersen's waiver is whether he signed it voluntarily, the Court need not separately address whether Petersen failed to read or understand the waiver, or to comprehend the eminently foreseeable consequences of his acquiescence to same.

waiver procedurally unconscionable where dealer could have decided to go elsewhere for products to support its commercial endeavors); *Ware Else, Inc. v. Ofstein,* 856 So.2d 1079, 1082 (Fla. 5th DCA 2003) ("In reality, however, the vast majority of employment agreements are 'take-it-or-leave-it' propositions. The fact is, if Ms. Ofstein did not like the terms of the agreement, she could indeed have left it."); *Allyn v. Western United Life Assur. Co.,* 347 F.Supp.2d 1246, 1254 n. 38 (M.D.Fla.2004) (observing that "waiver clauses have been held valid even in contracts containing 'take it or leave it' terms"); *Winiarski v. Brown & Brown, Inc.,* 2008 WL 1930484, *2–3 (M.D.Fla. May 1, 2008) ("The mere fact that an employee signs an employment agreement containing a jury trial waiver in a 'take it or leave it' situation does not make the waiver unenforceable or unconscionable," especially where "the moving party had an alternative to signing the agreement such as to remain in a current position rather than resign"); *La Torre v. BFS Retail and Commercial Operations, LLC,* 2008 WL 5156301, *4 (S.D.Fla. Dec. 8, 2008) (rejecting argument that waiver of jury right was involuntary even though employer insinuated that employee must sign it as condition of further employment); *Wisthle Inv. Group, LLC v. CR Hancock Bridge, LLC,* 2008 WL 2686963, *3 (M.D.Fla. June 30, 2008) ("Plaintiff's consent to the waiver would not automatically be considered involun-

tary simply because it was part of a standardized contract."); *Milsap v. Cornerstone Residential Management, Inc.,* 2007 WL 965590, *2 (S.D.Fla. Mar. 28, 2007) ("Toolen's consent was not involuntary simply because the provision was part of a standard form contract or contained boilerplate language."); *see generally Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1564 (Fed.Cir.1990) ("bare fact that the contracts in question are 'take it or leave it' offers by the government is not controlling on the dispute resolution provision's validity"). The sum total of Petersen's waiver argument appears to be that defendants required him to sign a standardized form containing a waiver during the application process. As the foregoing cases demonstrate, however, such a fact, without more, neither equates to involuntariness nor otherwise negates the waiver.[7]

▮▮ As noted, Florida courts deem a waiver of a constitutional right voluntary if the totality of the circumstances shows that "it was the product of free and deliberate choice rather than intimidation, coercion, or deception." *Sliney,* 699 So.2d at 668 (Fla.1997); *see also Gainesville Health Care Center, Inc. v. Weston,* 857 So.2d 278, 287 (Fla. 1st DCA 2003) (in context of procedural unconscionability argument, looking to circumstances surrounding transaction to determine whether complaining party had a "meaningful choice" when contract was executed).[8] Even ac-

---

**7.** In this regard, it bears noting that even if Petersen did not individually negotiate the terms of the recertification application, this document was prepared internally by the Florida Bar, a self-regulating association of attorneys of which Petersen is a member. In a sense, Petersen was the beneficiary of the collective bargaining power of his fellow Florida attorneys in the drafting of this document even if he himself did not negotiate its terms. *See generally Amon v. Norwegian Cruise Lines, Ltd.,* 2002 WL 32851545, *2 (S.D.Fla. Sept. 26, 2002) (finding waiver in employment con-

tract enforceable even though plaintiff—a Philippine seaman—possessed no bargaining power, because organization representing Philippine seamen had negotiated that agreement). On that basis, any suggestion by Petersen that he lacked bargaining power as to the recertification application form would be incorrect when that form was prepared and negotiated by an association of Florida attorneys of which he is a member, for the benefit of such members.

**8.** In assessing whether a contract signee had a "meaningful choice," Florida courts consid-

cepting the factual allegations of the Amended Complaint at face value, there is no basis for concluding that Petersen lacked a meaningful choice as to the waiver. There is no indication whatsoever that defendants engaged in tactics of intimidation, duress, coercion, or deception. At best, Petersen's theory is that he had to agree to the waiver if he wanted to apply for recertification. But the application for recertification was itself a free and voluntary choice on Petersen's part. Certainly, certification is not required in order to practice law, or even Petersen's chosen specialty of elder law, in the State of Florida. The Rules Regulating the Florida Bar make clear that "[p]articipation in the [certification] plan shall be on a voluntary basis." Rule 6–3.4(b),(d). No alleged facts suggest otherwise. Even if the waiver of his right to see peer review materials was unpalatable to Petersen at the time of his application (which he has not alleged in his pleading), and even if his recertification application would have been summarily rejected without a waiver (which he has not alleged any specific facts to demonstrate), Petersen still had a choice: (A) sign the recertification application and forego his right to access the peer review materials, or (B) refrain from applying for recertifi-

cation, and continue to earn a living practicing law without a certification just as thousands of other lawyers in the State of Florida do successfully every single day. Just because Petersen may not have been thrilled with these options does not imply that he lacked meaningful choice.[9] Ultimately, Petersen elected the first option, rather than the second, without any hint of interference or undue influence from anybody. Therefore, his waiver of his right to obtain peer review information was the product of free and deliberate choice, rather than intimidation, coercion or deception.

For all of the foregoing reasons, the Court rejects as a matter of law Petersen's argument that his waiver of right of access to peer review materials was invalid. The well-pleaded factual allegations of the Amended Complaint do not support a reasonable inference that Petersen was forced to sign the waiver against his will on a take-it-or-leave-it basis as a condition of his recertification application. Even if Petersen had pleaded such allegations (which he has not), the mere fact that signing the waiver was a condition of recertification, without more, does not automatically render the waiver involuntary, as a matter of well-established Florida law.[10]

---

er such factors as "whether the complaining party had a realistic opportunity to bargain ... and whether he or she had a reasonable opportunity to understand the terms of the contract." *Tropical Ford, Inc. v. Major,* 882 So.2d 476, 479 (Fla. 5th DCA 2004).

9. This rationale also applies to criminal cases, where courts have rejected defendants' after-the-fact efforts to characterize their guilty pleas as involuntary because they were faced with suboptimal alternatives. *See, e.g., Stinson v. State,* 839 So.2d 906, 909 (Fla. 5th DCA 2003) ("the fact that a defendant is presented with unpleasant alternatives does not render a guilty plea involuntary").

10. Were Petersen's position to be an accurate reflection of the law, a wide variety of waivers into which persons routinely enter in commercial, employment, criminal justice and

other settings would be worthless. For example, a prospective employee's waiver of his or her right to a jury trial, or the right to read employment references, in a preprinted form employment agreement would be subject to invalidation on the theory that the person had to sign the form waiver to get the job he or she wanted, so the waiver must have been involuntary. Likewise, a criminal defendant's waiver of certain appeal rights in a prosecutor's form plea agreement could be undone on the theory that he or she did not really want to waive those rights, but had to do so in order to receive the benefits of pleading guilty. Case after case has held that the mere existence of these kinds of tradeoffs does not render a waiver involuntary. Waivers are commonly executed in circumstances where the waiving party wants to obtain a certain benefit, but must agree to forego some right as a *quid pro quo* for that benefit. This kind

Petersen alleges no intimidation, coercion or deception by defendants, and he clearly had a meaningful choice, to-wit: He could have elected to practice law without a re-certification, just as untold numbers of his Florida attorney colleagues do. Petersen does not get to retract his deliberate, conscious choice to move forward with the recertification process, knowing that he was waiving his right to learn what his peers might have to say (whether good or ill) about him, merely because, in hindsight, he wishes he had made a different choice.

◼ Accordingly, the Court finds that the Motion to Dismiss is due to be **granted** insofar as it rests on the defense of waiver. Because Petersen waived his right to obtain adverse peer review materials, the entirety of his procedural due process claim (Count 1) and his right of access to courts claim (Count 4), as well as the portions of his substantive due process (Count 2) and free speech (Count 3) claims that relate to the confidentiality or nondisclosure of peer review materials, are **dismissed with prejudice** pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted.[11]

of bargain is not inherently involuntary, coerced, improper or invalid; to the contrary, such arrangements are routinely upheld by the courts. Petersen's strained application of the involuntariness doctrine to his circumstances would sweep countless voluntary waivers within its ambit, allowing a party who later regretted the bargain he or she had struck to negate a waiver by saying that he or she agreed to it only because the waiver was necessary to get what he or she wanted at the time. This is precisely what Petersen has attempted to do here.

11. The foregoing analysis is, by its nature, addressed to Petersen's "as-applied" constitutional challenges. In other words, the Court has not made findings as to whether the Florida Bar's nondisclosure of peer review materials to applicants who sign waivers and are denied recertification does or does not pass muster as a general proposition. Instead, the Court has explained why Petersen's voluntary waiver of his right to request such materials bars his constitutional challenges, such that the Florida Bar's practices are not unlawful as applied to Petersen. That said, although the parties' briefs on the Rule 12(b)(6) motion omit any reference to it, the undersigned recognizes that Petersen's Amended Complaint characterizes certain of his claims as both "facial" and "as-applied." For example, in Count 1, Petersen requests that this Court "issue an order declaring that the provisions of The Rules Regulating The Florida Bar and the BLSE policies pertaining to the confidentiality of peer review materials in re-certification matters *either facially violate the Due Process Clause or are unconstitutional as applied to Plaintiff."* (Doc. 27, at 13 (emphasis added).) Similarly, in Count 3, Petersen requests an order declaring that these same rules "either facially violate the First and Fourteenth Amendments or are unconstitutional as applied to Plaintiff." (*Id.* at 19.) However, any attempt by Petersen to mount a facial challenge to defendants' practice of maintaining confidential peer review materials when applicants waive their right of access to same must fail. The law is clear that "when a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1262 (11th Cir.2007). But the Court has already concluded that defendants' confidentiality practices concerning peer review materials have been applied constitutionally to Petersen (who signed a voluntary waiver and was thereafter deprived of access to peer review documents); therefore, any facial challenge to those practices would necessarily fail because the challenged practices can be, and have been, applied in a constitutional manner in this very case. *See generally CAMP Legal Defense Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1271 (11th Cir.2006) (even where a plaintiff brings an facial challenge to a statute or ordinance, "the plaintiff still must allege a distinct and palpable injury to himself") (citations and internal quotation marks omitted). "[I]f the statute is constitutional as applied to the individual asserting the challenge, the statute is facially valid." *United States v. Dang,* 488 F.3d 1135, 1141 (9th Cir.2007).

## B. Constitutional Claims Concerning Rules' Peer Review Criterion.

The findings that Petersen's challenge to the validity of his waiver is meritless, and that his knowing and voluntary waiver precludes his constitutional claims pertaining to defendants' refusal to share adverse peer review materials with him, are not dispositive of the Amended Complaint in its entirety. Rather, a pair of outstanding issues remain. Petersen has brought two claims that do not hinge on defendants' refusal to disclose peer review information to him. In particular, his substantive due process cause of action (Count 2) asserts that "[t]he peer review 'criterion,' needed for re-certification, in its current form, is so vague that it is arbitrary" and that defendants "have violated ... Plaintiff's constitutionally protected substantive due process rights by applying a vague and standardless criterion to Plaintiff in his re-certification matter." (Doc. 27, ¶¶ 42, 46.) Similarly, in his First Amendment free speech claim, Petersen alleges that the peer review criterion "is so vague that it is impossible to determine what communicative speech or conduct will subject an applicant to negative peer review and to a denial of recertification," and that said criterion "is overbroad and is unconstitutional in every conceivable application." (*Id.*, ¶¶ 50, 51.) These constitutional challenges to the peer review component of the recertification process are entirely divorced

from the secrecy or confidentiality of those materials; therefore, such challenges are not negated by Petersen's waiver of his right to obtain peer review materials.

### 1. Substantive Due Process Claim.

 As a general proposition, the concept of substantive due process "is designed to protect those rights that are fundamental—rights that are implicit in the concept of ordered liberty." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir.2002) (citation and internal quotation marks omitted); *see also Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010) (affirming denial of plaintiff's motion to amend complaint to add substantive due process claim because right in question is "not a fundamental right"); *Busse v. Lee County, Fla.*, 317 Fed.Appx. 968, 973 (11th Cir.2009) ("Substantive due process protects only those rights that are 'fundamental,' a description that applies only to those rights created by the United States Constitution."). The scope of substantive due process is quite narrow, and federal appellate courts have "cautioned against the open-ended judicial expansion of other unenumerated rights" in substantive due process jurisprudence. *Dacosta*, 304 F.3d at 1048.[12]

 Petersen would apparently contend in the first instance that his alleged property and liberty interests in recertification are "fundamental" for substantive due process purposes. Such an argument is mistaken.[13] Any property

---

12. *See also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("the Court has always been reluctant to expand the concept of substantive due process"); *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir.2007) ("The Supreme Court of the United States has made clear ... that the scope of substantive due process is very limited.").

13. As a threshold matter, no such property or liberty interests are present in this case. *See generally Zisser v. Florida Bar*, Case No. 3:09–cv–503–J–34JRK, ⎯ F.Supp.2d ⎯, ⎯,

2010 WL 4282103, at *22 (M.D.Fla. Mar. 29, 2010) (*slip op.*), at 39 ("applicants for board certification or recertification have neither a protected property interest nor a protected liberty interest in obtaining such certification"). After all, nothing was taken away from Petersen; rather, his prior certification lapsed by its own terms. Because he was not entitled to automatic recertification under state law or contract, there is a compelling argument that Petersen lacked a protectable property interest in obtaining recertification. *See, e.g., Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1462–64 (11th Cir.1991) (phy-

right Petersen may have in recertification would be created by Florida law, not by the Constitution. The Eleventh Circuit has taken a decidedly dim view of attempts to expand substantive due process protections to embrace state-created property rights, reasoning that such property rights are not fundamental because they were not created by the Constitution. *See, e.g., Lewis v. Brown,* 409 F.3d 1271, 1273 (11th Cir.2005) ("areas in which substantive rights are created only by state law are not subject to substantive due process protection") (citation omitted); *Greenbriar Village, L.L.C. v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir.2003) ("to the extent that Greenbriar predicates its substantive due process claim directly on the denial of its state-granted and -defined property right in the permit, no substantive due process claim is viable"); *Busse,* 317 Fed.Appx. at 973 (affirming dismissal of plaintiff's substantive due process claims because plaintiff "could not bring a viable substantive due process claim based on the alleged denial of a state-defined property right"). Furthermore, for a liberty interest to be "fundamental" for substantive due process purposes, it "must be objectively, deeply rooted in this Nation's history and tradition." *Tinker v. Beasley,* 429 F.3d 1324, 1327 (11th Cir.2005) (citations and internal quotation marks omitted). There is nothing objectively, deeply rooted in the history and tradition of the United States about a licensed attorney's interest in receiving a specialized certification that may enhance his income-earning capacity as a lawyer. *See generally Kirkpatrick v. Shaw,* 70 F.3d 100, 103 (11th Cir.1995) ("[t]he right to practice law is not a fundamental right"). It is thus quite clear that Petersen's substantive due process cause of action does not invoke a fundamental right.

As a fallback position, Petersen maintains that, even in the absence of infringement of a fundamental right, he can prevail on a substantive due process theory as long as he shows that he was subjected to arbitrary government action. As grounds for this theory, Petersen cites without comment or elaboration a single 16–year old decision from the Ninth Circuit. However, the above-cited Eleventh Circuit authorities do not appear to support that proposition, and there is additional, abundant authority containing language suggesting that violation of a fundamental right is necessary to establish a substantive due process claim.[14] That principle in itself would ne-

sician who was denied additional staff privileges lacked property interest in those privileges, where he had no entitlement to them under state law or contract, his ability to engage in private practice was not seriously impaired, and mere fact that additional staff privileges had expected economic value to him does not create a property interest); *Gilder–Lucas v. Elmore County Bd. of Educ.,* 186 Fed.Appx. 885, 887 (11th Cir.2006) (non-tenured teacher had no property interest in her job because she was not entitled to re-employment or renewal of contract). Moreover, the circumstances presented here appear vastly different than those in which federal courts have recognized a viable liberty interest. *See, e.g., Martin v. Memorial Hosp. at Gulfport,* 130 F.3d 1143, 1148–49 (5th Cir. 1997) (to constitute deprivation of liberty interest, employment-related state action must

effectively foreclose plaintiff from practicing in the area through stigma, denial of license, or denial of credentials necessary for pursuing occupation); *Todorov,* 921 F.2d at 1462–64 (physician who was denied additional staff privileges lacked liberty interest in them, where his ability to engage in private practice was not seriously impaired, and his retention of employment and lack of evidence of stigma negate claim that he was denied a liberty interest). Petersen has not alleged that, without certification, he is grievously stigmatized in the legal community and/or unable to retain his employment.

14. *See, e.g., Coventry First,* 605 F.3d at 865 (affirming denial of plaintiff's motion to amend complaint to add substantive due process claim because the right in question is "not a fundamental right"); *Behrens v. Regi-*

gate Petersen's substantive due process cause of action. Moreover, assuming that substantive due process claims can be brought in the absence of a fundamental right, the law is quite clear that, under any circumstances, it is an absolute prerequisite for a substantive due process claim that the plaintiff show deprivation of a protectable interest in life, liberty or property.[15] For reasons already stated in footnote 13, *supra,* the undersigned is of the opinion that Petersen has failed to allege any liberty or property interest in recertification as an elder law specialist that might be subject to protection under the substantive due process doctrine.[16]

---

*er,* 422 F.3d 1255, 1264 (11th Cir.2005) (district court did not err in dismissing plaintiff's substantive due process claim where plaintiff "has failed to allege the deprivation of any fundamental right"); *Wright v. Lovin,* 32 F.3d 538, 540 (11th Cir.1994) ("The substantive component of the Due Process Clause protects only those rights that are fundamental."); *Akins v. Epperly,* 588 F.3d 1178, 1183 (8th Cir.2009) ("To establish a substantive due process violation, Akins must demonstrate that a fundamental right was violated. . . ."); *Idris v. City of Chicago, Ill.,* 552 F.3d 564, 566 (7th Cir.2009) (rejecting notion that "if a law is arbitrary or capricious, then the absence of a fundamental right does not matter," and construing Supreme Court authority as adamantly holding that "only state action that impinges on fundamental rights is subject to evaluation under substantive due process"); *Gikas v. Washington School Dist.,* 328 F.3d 731, 733 (3rd Cir. 2003) ("a property interest must be fundamental under the United States Constitution to be subject to substantive due process protection"). In that regard, it bears noting that the Eleventh Circuit has resisted arguments that the arbitrary or irrational deprivation of state-created rights gives rise to a substantive due process claim, which is effectively a procedural due process claim in disguise. As one panel explained, "[c]laiming that the interest was deprived arbitrarily or irrationally is equivalent to claiming that no fair, unbiased, and meaningful procedures were used for the deprivation. That type of inquiry falls squarely within what we have defined (and clarified explicitly in *McKinney* [*v. Pate,* 20 F.3d 1550 (11th Cir.1994) ] ) as a procedural due process claim." *Greenbriar,* 345 F.3d at 1263 n. 4. The Court is aware that the Eleventh Circuit has distinguished between "legislative" and "non-legislative" acts in the substantive due process analysis; however, Petersen has neither invoked these authorities nor made any effort to apply them by advancing any arguments as to the legislative or non-legislative character of the gov-

ernment action at issue here. The Court will not develop these arguments for him.

**15.** *See Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008) ("In order to assert a valid substantive due process claim, Appellants have to prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience."); *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir.2007) (to prevail on a substantive due process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest" or liberty interest) (citations omitted); *Brittain v. Hansen,* 451 F.3d 982, 991 (9th Cir.2006) ("As a threshold matter, to establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property.") (citation omitted); *County Concrete Corp. v. Town of Roxbury,* 442 F.3d 159, 165 (3rd Cir.2006) ("To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest.") (citation omitted).

**16.** In any event, to the extent that a substantive due process challenge can be asserted as to the Florida Bar's peer review regulations even without a fundamental right or a protectable constitutional interest at all, the Court readily finds that those regulations are not arbitrary and capricious and that they pass muster under the highly deferential "rational basis" test. *See, e.g., United States v. Plummer,* 221 F.3d 1298, 1308–09 (11th Cir. 2000) ("Under our substantive due process jurisprudence, a statute or regulation will be upheld so long as it is rationally related to a lawful government purpose and is not unlawfully arbitrary or discriminatory."). There is obviously a rational basis for the Florida Bar's desire to collect and consider wide-ranging peer review information on certification applicants pertaining to their competence

### 2. Free Speech Claim.

The only remaining cause of action is Petersen's claim that the Florida Bar's rules governing use of peer review information in the recertification process "are vague and overbroad and violate Plaintiff's free speech rights guaranteed under the First Amendment to the United States Constitution." (Doc. 27, at 17.) According to Petersen, the peer review rules unconstitutionally burden his free speech rights because they are so fuzzy and far-reaching that "it is impossible to determine what communicative speech or conduct will subject an applicant to negative peer review" and that "virtually any communicative speech or conduct" can result in "loss of specialty certification." (*Id.*) Petersen takes this argument a step further in his briefing, where he insists that "[t]he peer review criterion specifically targets an applicant's protected speech in the guise of 'character, ethics and reputation for professionalism,'" and that it has a "chilling effect on constitutionally protected expression" by placing an attorney's political and religious views and other protected speech firmly within the crosshairs of matters that may be used to disqualify him or her under the pretense of examining the attorney's "reputation for professionalism." (Doc. 38, at 16.)

 As an initial matter, it must be emphasized that the peer review rules and standards governing the Florida Bar's voluntary recertification and specialization program do not purport to punish, regulate, restrain or chill any protected speech. At most, they simply provide that a lawyer who chooses to apply for recertification must submit to peer review, which is conducted for the stated purpose of "assess[ing] competence in the specialty field, and professionalism and ethics in the practice of law." Rule 6–3.5(c)(6). Thus, these rules are directed not at speech, *per se,* but at conduct by an officer of the court bearing on his or her expertise as an elder lawyer, and his or her professionalism and ethics in the practice of law. Plainly, these rules have no more than a remote and conjectural impact on speech protected by the First Amendment. Petersen's argument to the contrary is so speculative and attenuated that it strains credulity.[17]

This lack of a substantial nexus to protected speech is itself fatal to Petersen's free speech cause of action. *See generally City of Chicago v. Morales,* 527 U.S. 41, 52–53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (gang loitering ordinance that does not prohibit speech "does not have a sufficiently substantial impact on conduct protected by the First Amendment to render it unconstitutional"). Indeed, courts have routinely rejected arguments such as Petersen's in the context of analogous state bar requirements concerning "moral character," "general fitness for admission," and the like that may have some remote or incidental effect on attorney or bar applicant speech. *See, e.g., Law Students Civil Rights Research Council, Inc. v. Wadmond,* 401 U.S. 154, 159, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (finding no First Amendment infirmity in requirements of character and general fitness for admission to state bar, despite appellants' argument that very existence of these standards works a chilling effect on applicants' speech); *Kirkpatrick,* 70 F.3d at 104 (rejecting plaintiff's claim that Florida bar

---

in the specialty field and their professionalism and ethics in the practice of law, and a rational basis for the Bar to believe that the challenged regulations would further this purpose.

**17.** Petersen's position also disregards the well-established principle that "[a] lawyer's right to free speech is tempered by his or her obligation to both the courts and the bar." *In re Comfort,* 284 Kan. 183, 159 P.3d 1011, 1027 (2007).

rules chill speech of qualified applicants pending favorable outcome of character investigation, and expressly finding no First Amendment violations in challenged rules).[18]

 The foregoing principles are dispositive of plaintiff's strained First Amendment challenge to the peer review criterion. Nonetheless, it bears noting that Petersen's specific overbreadth and vagueness challenges are devoid of merit for additional reasons, too. Fundamentally, plaintiff overlooks the fact that the peer review provisions to which he objects are, by their very terms, confined "to solicit information to assess competence *in the specialty field,* and professionalism and ethics *in the practice of law.*" Rule 6–3.5(c)(6) (emphasis added). The persons called upon to provide peer review are individuals "who can attest to the applicant's special competence and substan-

tial involvement *in the field of elder law.*" Rule 6–20.3(d) (emphasis added). Before invoking the "strong medicine" of invalidation of a statute or regulation on overbreadth grounds, a plaintiff "must demonstrate that the statute punishes a 'substantial' amount of protected free speech ... not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Frazier ex rel. Frazier v. Winn,* 535 F.3d 1279, 1284 (11th Cir.2008) (citations and internal quotation marks omitted). Even if Petersen were correct that the Florida Bar's inquiries into his "professionalism and ethics in the practice of law" during the recertification process might reach a modicum of protected speech, they plainly would not punish a substantial amount of protected free speech relative to the rules' plainly legitimate sweep of not certifying attorneys who practice law in a manner below the highest standards of professionalism

**18.** *See also Howell v. State Bar of Texas,* 843 F.2d 205, 208 (5th Cir.1988) (district court did not err in rejecting First Amendment vagueness and overbreadth challenges to state bar regulation forbidding attorneys from engaging in conduct prejudicial to administration of justice, given application of regulation to attorneys in their function as officers of the court and fact that attorneys have guidance provided by case law, court rules and "lore of the profession" in discerning rule's meaning); *Canatella v. Stovitz,* 213 Fed.Appx. 515, 517–18 (9th Cir.2006) (denying First Amendment vagueness and overbreadth challenges to attorney disciplinary rules, where plaintiff failed to prove that provisions in question punish substantial amount of protected speech, or that the provisions he attacked involve anything other than terms of common understanding); *Roe v. State Bar of Michigan,* 74 Fed.Appx. 490 (6th Cir.2003) (law students' First Amendment challenge to state bar requirement that they prove "good moral character" as a condition of admission to practice was denied because nothing in the requirement speaks to individuals' rights to free speech and expression, there is no authority for proposition that practicing law is itself a protected First Amendment activity,

and plaintiffs failed to demonstrate realistic danger that statute will be applied to compromise their First Amendment rights); *Comfort,* 159 P.3d at 1011 (denying vagueness and overbreadth challenges to attorney disciplinary provisions that used words with commonly understood meanings and that regulated conduct, not speech); *In re Converse,* 258 Neb. 159, 602 N.W.2d 500, 506 (1999) (opining that law is "clear that a bar commission is allowed to consider speech and conduct in making determinations of an applicant's character, and that is precisely what has occurred in the instant case"); *Attorney Grievance Com'n v. Alison,* 317 Md. 523, 565 A.2d 660, 667 (1989) (state bar rule prohibiting attorneys from conduct prejudicial to administration of justice held to be neither vague nor overbroad); *In re Charges of Unprofessional Conduct Against N.P.,* 361 N.W.2d 386, 395 (Minn.1985) (rejecting vagueness challenge to rules of professional responsibility for lawyers because "it is difficult, if not impossible, to enumerate and define, with legal precision, every offense for which an attorney ... ought to be removed," such that "necessarily broad standards of professional conduct" are constitutionally permissible) (citations omitted).

and ethics, as those terms are commonly understood in the legal profession. Accordingly, the overbreadth objection fails on its face.

As for vagueness, the Court finds that the terms "professionalism and ethics in the practice of law" are not so vague as to be inscrutable to the class of attorneys to whom they apply, particularly given the commonly understood meanings of such terms within the legal profession, where attorneys receive both law school training and continuing legal education in the very fields of professionalism and ethics. *See, e.g., Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1310 (11th Cir.2009) (statute is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning") (citation omitted); *Howell v. State Bar of Texas,* 843 F.2d 205, 208 (5th Cir.1988) (denying vagueness challenge to attorney disciplinary rule because "[t]he regulation at issue herein applies only to lawyers, who are professionals and have the benefit of guidance provided by case law, court rules and the lore of the profession") (citation and internal quotation marks omitted).[19] Besides, in order for a First Amendment vagueness challenge to prevail, "the alleged vagueness must pose a real and substantial threat to protected expression such that a substantial amount of legitimate speech will be chilled." *McEntee v. Merit Systems Protection Bd.,* 404 F.3d 1320, 1333 (Fed.Cir.2005). It is frankly inconceivable that the Florida Bar's rules providing for inquiry into a board certification applicant's "professionalism and ethics in the practice of law" will chill a substantial amount of legitimate speech; therefore, the objected-to rules and regulations are not void for vagueness.

In short, the elder law certification rules challenged by Petersen do not have a sufficiently substantial impact on conduct protected by the First Amendment to render them unconstitutional, they are not overbroad because they do not punish a substantial amount of protected free speech relative to their legitimate sweep, and they are not so vague that attorneys of common intelligence could not understand their meaning or that a substantial amount of free speech would be chilled. For all of these reasons, defendants' motion to dismiss is **granted** as to Petersen's First Amendment challenges to the peer review rules.

## III. Conclusion.

In light of the foregoing, the Court concludes that Defendants' Motion to Dismiss Amended Complaint (doc. 35) is due to be, and the same hereby is, **granted.** This

---

**19.** Petersen speculates that the professionalism inquiry in the recertification process is so vague that it could be used to reject his application because of his "membership in a particular place of worship," his expressions of "distaste for a group's discriminatory practices," his "stand on particular political issues," or "the style of clothes he or she wears." (Doc. 38, at 16.) This "parade of horribles" argument is irreconcilable with the facts. On their face, the rules provide that peer review "shall be used to solicit information to assess competence in the specialty field, and professionalism and ethics *in the practice of law.*" Rule 6–3.5(c)(6) (emphasis added). Petersen does not explain what an attorney's style of dress or religious or political affiliation could possibly have to do with his "professionalism and ethics in the practice of law," which are the criteria that the peer review process is expressly used to assess. Moreover, the Supreme Court has explained that such "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado,* 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (citation omitted). Such is the case here.

action is **dismissed with prejudice** pursuant to Rule 12(b)(6), Fed.R.Civ.P. All other pending motions are **moot.** A separate judgment will enter.