CLARK, J.
 

 The appellant challenges an order by which the circuit court stayed the appellant’s wrongful death and medical negligence action, and compelled arbitration pursuant to a doctor-patient agreement. In contesting that ruling, the appellant contends that the contractual agreement was misconstrued, that it is otherwise void as being contrary to public policy, and unconscionable. However, the appellant has not established any such infirmity with regard to the contractual provisions, or any error in the court’s enforcement of the contractual agreement.
 

 The appellant, as the personal representative of the estate of Joseph Franks, sued the appellees for wrongful death and medical negligence when Mr. Franks died after receiving medical care from the appellees. In obtaining such care, Mr. Franks had signed a document entitled “North Florida Surgeons Financial Agreement” which contained a provision whereby the doctor and patient agreed that all disputes, including “any negligence claim relating to the diagnosis, treatment, or care of Patient ... shall be resolved by arbitration.... ” The agreement called for the arbitration to be “in lieu and instead of .any trial by Judge or Jury.” The agreement further provided a limitation on non-economic damages, and required compliance with the pre-suit notice requirements in Chapter 766, Florida Statutes.
 

 In response to the appellant’s lawsuit, the appellees sought to compel arbitration under the terms of the Financial Agreement. The appellant replied to that motion by asserting that the Financial Agreement’s invocation of the pre-suit notice provisions in Chapter 766 also invoked the arbitration provisions in that chapter, with such arbitration being voluntary rather than mandatory. The circuit court rejected that argument, ruling instead that the mandatory arbitration clause in the Financial Agreement was controlling. Although the appellant now argues that the court misconstrued the Financial Agreement in that regard, the court properly construed and applied the arbitration clause.
 

 The appellant contends that the arbitration clause in the Financial Agreement is contrary to the public policy reflected in Chapter 766, which contains a somewhat different arbitration scheme for claims of medical negligence. Among other differences, for the voluntary arbitration in Chapter 766 to pertain, the defendants must not contest liability and the arbitration would address the amount of damages, with certain specified evidentiary standards, and a limitation on the amount of non-economic damages that could be awarded in arbitration, and another limitation if the claim proceeds to trial.
 
 See
 
 §§ 766.106(3)(b)(3); 766.207(2); 766.207(7); 766.118(2), Fla. Stat. The arbitration clause in the Financial Agreement contains a similar limitation on the arbitrated non-economic damages, but without any requirement that liability not be contested, and without any provision for the claim to proceed to trial (as arbitration under the Financial Agreement is mandatory). The appellant points to these differences, along with certain other differences between the Financial Agreement and Chapter 766 arbitration, and asserts that the Financial Agreement is thereby inconsistent with the public policy which the legislature embodied in Chapter 766.
 

 In furtherance of that policy argument, the appellant refers to
 
 Alterra Healthcare
 
 
 *18
 

 Corp. v. Estate of Linton,
 
 953 So.2d 574 (Fla. 1st DCA 2007), which invalidated an arbitration agreement with limitations on non-economic damages and with other restrictions, as being inconsistent with statutory provisions and public policy. The court in
 
 Alterra Healthcare
 
 referred to the Nursing Home Residents Act in Chapter 400, Florida Statutes, and the Assisted Living Facilities Act which is now in Chapter 429, Florida Statutes.
 
 See also Blankfeld v. Richmond Health Care, Inc.,
 
 902 So.2d 296 (Fla. 4th DCA 2005);
 
 Romano v. Manor Care, Inc.,
 
 861 So.2d 59 (Fla. 4th DCA 2003). However, those cases do not address Chapter 766 arbitration, and instead involved arbitration agreements that were contrary to remedial enactments which did not authorize arbitration, and which created private rights and a statutory cause of action which had not previously existed. And as was emphasized in
 
 Blank-feld
 
 and
 
 Romano,
 
 the legislature enacted the nursing home provisions after a grand jury investigation revealed that substantial abuses of residents were occurring on a frequent basis in those facilities, whereupon the legislature responded with statutes intended to protect the residents, guaranteeing them certain rights and providing a civil cause of action for violations of those rights.
 
 See e.g.
 
 § 400.023, Fla. Stat.
 

 The medical negligence provisions in Chapter 766, on the other hand, were enacted in response to a dramatic increase in the cost of medical malpractice insurance,
 
 see
 
 section 766.201, Florida Statutes, which the supreme court described in
 
 University of Miami v. Echarte,
 
 618 So.2d 189 (Fla. 1993), as creating an “overpowering public necessity.” Chapter 766 itself imposes limitations on non-economic damages, and provides for arbitration as a means of dispute resolution.
 
 See
 
 §§ 766.207; 766.209; 766.118, Fla. Stat.
 

 The differences between the arbitration process in Chapter 766 and arbitration under the Financial Agreement in the present case do not countermand the public policy reflected in Chapter 766, as applied to the claims presented in this case. Unlike the nursing home cases, the Financial Agreement does not eliminate statutory rights which are essential in effectuating legislative intent, or policy. Instead, the arbitration clause, as applied in this instance, affords meaningful relief and is consistent with the legislative purpose and the public policy which led to the enactment of the medical negligence provisions in Chapter 766.
 

 The appellant has likewise failed to show any infirmity with regard to the arbitration provisions in the Financial Agreement, upon the assertion that they should be deemed to be unconscionable. Such unconscionability relates to the procedural manner in which the agreement was obtained, and substantive notions of basic fairness.
 
 See e.g., Gainesville Health Care Center, Inc. v. Weston,
 
 857 So.2d 278 (Fla. 1st DCA 2003);
 
 Fowertel. Inc. v. Bexley,
 
 743 So.2d 570 (Fla. 1st DCA 1999);
 
 see also Frantz v. Shedden,
 
 974 So.2d 1193 (Fla. 2d DCA 2008). To prevail on an assertion that a contractual provision is unconscionable and should not be enforced, the appellant must show that the agreement is both procedurally and substantively unconscionable.
 
 Id.
 
 The appellant has not made that necessary showing, and in the circumstances of this case has thus not demonstrated any unconscionability, or any error in the circuit court’s enforcement of the contractual agreement.
 

 The appealed order is AFFIRMED.
 

 VAN NORTWICK and LEWIS, JJ., concur.